

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00088-CR

DAVID SCOTT REITZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 331st District Court
Travis County, Texas
Trial Court No. D-1-DC-16-206732

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# M E M O R A N D U M   O P I N I O N

A Travis County jury found David Scott Reitz guilty of driving while intoxicated (DWI), third or more, a third-degree felony.[1]  *See* TEX. PENAL CODE ANN. § 49.09(b) (West Supp. 2018). In accordance with the jury's assessment, the trial court sentenced Reitz to eight years' imprisonment.  In his sole point of error on appeal, Reitz argues that the trial court erred in denying his motion to dismiss the indictment based on an alleged violation of his right to a speedy trial.

We find that the trial court did not err in declining to dismiss the indictment because Reitz' right to a speedy trial was not violated.  Accordingly, we affirm the trial court's judgment.

## I.    The Trial Court Did Not Err in Declining to Dismiss the Indictment

### A.    Standard of Review

"The Sixth Amendment guarantees a defendant in a criminal prosecution the right to a speedy trial."  *Hopper v. State*, 520 S.W.3d 915, 923 (Tex. Crim. App. 2017) (citing U.S. CONST. amend. VI); *see Barker v. Wingo*, 407 U.S. 514, 515 (1972).  The right to a speedy trial cannot be quantified in days or months.  *Barker*, 407 U.S. at 523; *see State v. Davis*, 549 S.W.3d 688, 697 (Tex. App.—Austin 2017, no pet.).  Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the four *Barker v. Wingo* factors." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

In executing the balancing test, "the conduct of the prosecution and the defendant are weighed based on four factors:  (1) the length of the delay, (2) the reason for the delay, (3) the

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We follow the precedent of the Third Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

defendant's assertion of his right, and (4) any prejudice inflicted by the delay." *Davis*, 549 S.W.3d at 697 (citing *Hopper*, 520 S.W.3d at 923–24). "Under the *Barker* test, the State bears the burden of justifying the length of the delay, while appellant must meet his burden of proving his assertion of the right to speedy trial and showing prejudice." *Id.* No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Cantu*, 253 S.W.3d at 281.

When reviewing a trial court's decision on a speedy-trial claim, an appellate court applies a bifurcated standard of review. *Stock v. State*, 214 S.W.3d 761, 764 (Tex. App.—Austin 2007, no pet.) (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). "Specifically, we review the trial court's decision under 'an abuse of discretion standard for the factual components, and a de novo standard for the legal components.'" *Id.* (quoting *Zamorano*, 84 S.W.3d at 648).

### B.  Analysis

#### 1.  The Length of Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be considered presumptively prejudicial. *Davis*, 549 S.W.3d at 697. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* (quoting *Zamorano*, 84 S.W.3d at 649). "Generally, delays 'approaching one year' will trigger a speedy-trial inquiry." *Id.* (quoting *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016)).

3

In this case, Reitz was arrested for DWI on October 25, 2016, the indictment was filed on December 8, 2016, but trial was not conducted until April 30, 2018. We find this delay of approximately eighteen months presumptively prejudicial in light of the nature of the offense involved. *See id.* (citing *Doggett v. United States*, 505 U.S. 647, 651–52 n.1 (1992) (noting courts generally find delays approaching one year presumptively prejudicial)). Accordingly, as the State concedes, Reitz "has demonstrated that a full analysis of the *Barker v. Wingo* factors is appropriate."

### 2. Reason for the Delay

While the "burden of excusing the delay rests with *the State*," *Phillips v. State*, 650 S.W.2d 396, 400 (Tex. Crim. App. [Panel Op.] 1983), "different weights should be assigned to different reasons," *Barker*, 407 U.S. at 531, when analyzing this prong of the *Barker* test. Deliberate attempts to delay trial in order to hamper a defense are weighed heavily against the State. *Davis*, 549 S.W.3d at 699 (citing *Balderas*, 517 S.W.3d at 768); *see Barker*, 407 U.S. at 531. "[M]ore neutral reasons, such as negligence or overcrowded courts are weighed less heavily." *Davis*, 549 S.W.3d at 699. "Valid reasons will justify appropriate delays." *Id.* Delay which is attributable in whole or in part to the defendant is heavily weighed against the defendant and "may even constitute a waiver of a speedy[-]trial claim." *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Barker*, 407 U.S. at 528–30; *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennen, J., concurring)). "Between diligent prosecution and bad-faith delay is the middle ground of official negligence in bringing an accused to trial." *Davis*, 549 S.W.3d at 699 (citing *Doggett*, 505 U.S. at 656–57). "Such negligence is weighed more lightly than a deliberate intent to harm the accused's

4

defense." *Id.* (citing *Doggett*, 505 U.S. at 657). "Courts' tolerance of such negligence 'varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial.'" *Id.* (quoting *Doggett*, 505 U.S. at 657 (citation omitted)).

### a.    Valid Reasons

In order to examine the reasons for the delay, we briefly review the timeline of events taking place in this case. Counsel was appointed to represent Reitz on October 28, 2016, just a few days after his arrest. The appellate record establishes a short delay between the date of his arrest and the return of the indictment, which was filed on December 8, 2016. The record demonstrates that the delay occurred because the State was awaiting the return of an Austin Police Department Blood and Alcohol Report, which was not authored until December 5, 2016. We find this short delay reasonable.

In January 2017, Reitz' counsel was informed that the State intended to enhance punishment by including a habitual-offender allegation.[2] Because counsel was not qualified to represent defendants facing more than twenty years' imprisonment under the Travis County Fair Defense Plan, counsel was granted his motion to withdraw from the case. Consequently, another attorney was appointed to represent Reitz on February 9, 2017. Reitz' second attorney withdrew due to a conflict of interest, and his third attorney was appointed on February 16, 2017. A motion for discovery was promptly filed. At a February 28 hearing, Reitz' third attorney indicated that the State had recently made a plea offer.

---

[2]The record established that Reitz was previously convicted of two felony offenses that met the requirements of Section 12.42(d) of the Texas Penal Code.

The record contains a four-month absence of activity until Reitz' counsel filed a motion to reduce bond on June 5, 2017. During a July 17, 2017, hearing, Reitz rejected the State's plea offers of either two years' imprisonment on the current charge or community supervision on a reduced charge. After Reitz rejected the offers, the State indicated that it would "reindict [Reitz] for habitual status before . . . put[ting] it on the trial docket."

Reitz characterizes the delay between January and July as a deliberate attempt by the State to delay his trial. Specifically, he argues that the State caused his first attorney to withdraw by indicating that it would add a habitual-offender allegation, did not prepare to add the allegation until "sometime between July and September 2017," and ultimately decided not to do so. We do not find that the trial court abused its discretion in declining to attribute this portion of the delay to the State. The record reflects that a new assistant district attorney was appointed to represent the State after the July 2017 hearing. When asked if it intended to enhance Reitz' punishment, the State said,

> I didn't feel it was really fair to . . . try you on 25 to 99. So we're going to be two to ten, and that's all the punishment range that I feel as though we need. I thought it would be disingenuous to offer you back time on a misdemeanor and then try and hang you for 25.

Thus, while the State ultimately decided not to charge Reitz as a habitual offender, the record established that this was the result of prosecutorial discretion that benefitted Reitz.

Here, the January to July 2017 delay is easily explained by valid reasons. Reitz' first counsel explained in writing that he had not yet received all the evidence in the case before he withdrew. After appointment of Reitz' third counsel, the record demonstrates that Reitz and the State were engaged in earnest plea negotiations from February 28 until July 17. We find that

6

ongoing discovery and plea negotiations constituted valid reasons for delay that cannot be weighed against the State.[3]  *See Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d at 824.

### b.      Neutral Reasons

Next, at the July 17, 2017, hearing, the court coordinator informed the parties that the next available jury trial setting would be in October.  The statement by the court coordinator indicated that a portion of the delay was the result of overcrowded courts, which constituted a neutral reason that "must be counted against the State, although not heavily."  *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003).  However, a further examination of the record shows that a portion of the delay was also attributable to Reitz.

### c.      Delay Attributable in Whole or in Part to Reitz

The July 17 hearing concluded with Reitz' request to reset the case and "think it over."  Reitz filed a motion to dismiss his third appointed counsel on July 17, September 22, and October 12.  Citing Reitz' "openly hostile" nature and his "unwilling[ness] to accept his attorney's advice," Reitz' third counsel filed his own motion to withdraw from the case on October 16, 2017.  Eventually, Reitz requested that he be allowed to proceed pro se.  The trial court granted both requests, allowed counsel to withdraw, and allowed Reitz to appear pro se.  However, on October 20, 2017, the trial court appointed a fourth attorney as standby counsel only.[4]  We find

---

[3]At a September 6, 2017, hearing, after Reitz pled not guilty to the offense, the State informed the trial court that the penitentiary packets it had ordered had not yet been received.  The record does not indicate when the State made its request for the information.

[4]On October 26, 2017, Reitz executed a written waiver of his right to counsel.

7

that the record demonstrated that the delay from July through October 20 was the result of Reitz' relationship with his counsel.

Trial was set for December 4, 2017, approximately six weeks after standby counsel was appointed. However, during a December 1, 2017, pretrial hearing, Reitz requested a ten-day continuance because he had failed to properly subpoena his rebuttal witnesses. The trial court explained that it could not grant a mere ten-day continuance because the next earliest available date for a jury trial was in the Spring of 2018. On December 4, 2017, Reitz again requested and was granted a continuance, and a new trial date was set for April 24, 2018.[5] Reitz announced ready during an April 24 hearing, and voir dire began on April 30, 2018. We find the delay between December 1, 2017, and April 24, 2018, wholly attributable to Reitz.[6] *See Celestine v. State*, 356 S.W.3d 502, 507–08 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[A]greed resets are inconsistent with assertion of a speedy trial right, and the delay covered by such resets should not be included in speedy trial computations.") (internal quotation marks omitted)).

In sum, the appellate record demonstrated that the reason for the delay was not the result of any deliberate attempt by the State to delay the trial or hamper Reitz' defense. While valid and neutral reasons played a role in the delay, a portion of the July to October 2017 delay was attributable to Reitz, and the remaining portion of the delay was wholly attributable to him. Because nine months of delay was attributable to Reitz in whole or part, we find that this factor

---

[5]On January 3, 2018, Reitz filed a motion stating he was unable to prepare for the newly set April 24 court date due to his incarceration and lack of resources in jail. During a February 23 hearing, Reitz also said, "I'm going to also need some time to review the video and . . . take notes."

[6]Reitz also suffered from his lack of legal education. January 19 and February 23, 2018, hearings established that Reitz was experiencing difficulty locating and securing rebuttal witnesses.

weighs heavily against him, considering that he was brought to trial eighteen months after his arrest.

### 3.    Assertion of Right

Next, "[t]he defendant's assertion of his right to a speedy trial—the third *Barker* factor—is entitled to strong evidentiary weight in our determination of whether the defendant has been deprived of that right." *Davis*, 549 S.W.3d at 704 (citing *Balderas*, 517 S.W.3d at 771; *Gonzales v. State*, 435 S.W.3d 801, 810–11 (Tex. Crim. App. 2014)). "A speedy-trial demand should be unambiguous." *Id.* (citing *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013)). Reitz had the responsibility to timely assert his right to a speedy trial. *See Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28).

Typically, "[r]epeated requests for a speedy trial weigh heavily in favor of the defendant." *Id.* at 283 (citing *Barker*, 407 U.S. at 534–36). Between February 21 and September 6, 2017, Reitz filed four pro se motions for speedy trial,[7] and the reporter's record initially shows that Reitz wanted a speedy trial. However, Reitz was represented by counsel when his first four motions were filed. Since "a defendant has no right to hybrid representation," "a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel." *Robinson v. State*, 240 S.W.3d 919, 921–22 (Tex. Crim. App. 2007); *see Robinson v. State*, No. 03-14-

---

[7]On February 21, 2017, Reitz filed his first pro se motion for speedy trial, which argued that he had been denied reasonable bond, argued that he had already been confined for 110 days, and prayed for either a speedy trial or dismissal of the indictment. On May 2, 2017, Reitz filed a second pro se motion for speedy trial. Although that motion sought a speedy trial or dismissal of the indictment, Reitz emphasized his desire for a dismissal. Reitz filed third and fourth pro se motions for speedy trial on July 6 and September 6, 2017, respectively, each time asking for a speedy trial only.

00407-CR, 2015 WL 4515128, at *5 (Tex. App.—Austin July 22, 2015, pet. ref'd) (mem. op., not designated for publication).[8]

Moreover, a motion for speedy trial "must be 'presented' to the trial court to preserve a complaint for appellate review, and presentment means more than mere filing." *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see Zamorano*, 84 S.W.3d at 652 (quoting *Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987) ("assertion-of-right factor weighs against appellant where 'there is no evidence beyond the two motions for speedy trial filed with the district clerk that appellant asserted his right to a speedy trial by requesting hearings to present evidence on the matter'"), *vacated and remanded on other grounds*, 488 U.S. 807 (1988)). Although he had the opportunity during several hearings, Reitz did not present his first four pro se motions for the trial court's review.[9]

After the trial court granted Reitz' request for self-representation, on January 3, 2018, Reitz filed his fifth pro se motion for speedy trial. That was the first speedy-trial motion that the trial court was not free to disregard. By that time, Reitz had already requested a continuance of the trial date. The motion was not presented until the April 17, 2018, pretrial hearing. The delay in presentment is relevant in determining this *Barker* factor. *See Barker*, 407 U.S. at 529 (we consider

---

[8]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[9]At a September 8, 2017, hearing, although he did not specifically bring the court's attention to the motion for speedy trial, the following discussion occurred:
THE DEFENDANT: Why are we stalling? Can I get to jury trial?
THE COURT: Yeah.
THE DEFENDANT: Thank you, Your Honor.
THE COURT: We'll give you a speedy trial.
THE DEFENDANT: Thank you, sir.

10

the force of the defendant's objections to the delay).[10]  At the hearing on his motion for speedy trial, Reitz informed the trial court that he wished for a dismissal of the indictment.  Requesting dismissal of the charges indicates a desire to have no trial instead of a speedy one.  *Cantu*, 253 S.W.3d at 283.

Reitz's delay in presenting his motion for speedy trial, coupled with his request for a dismissal at the hearing on his motion, leads us to conclude that this *Barker* factor weighs against him.

### 4.    Prejudice

"A defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required."  *Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016). Prejudice occasioned by the delay in proceeding to trial is assessed in light of the three interests which the right to a speedy trial was designed to protect:  (1) freedom from oppressive pretrial incarceration; (2) mitigation of the anxiety and concern on the part of the accused that accompanies a public accusation; and (3) avoidance of impairment to the defense of the charges.  *Barker*, 407 U.S. at 532; *see Davis*, 549 S.W.3d at 697.  The third factor is the most important because the accused's inability to prepare adequately skews the fairness of the entire system.  *Barker*, 407 U.S. at 532; *see Balderas*, 517 S.W.3d at 768.

Here, Reitz makes no argument with respect to the third factor.  Instead, he argues, "It is clear that Appellant endured pretrial detention and the anxiety and concern that are inherent with

---

[10]*See Speights v. State*, No. 06-12-00137-CR, 2014 WL 1246074, at *5 (Tex. App.—Texarkana Mar. 26, 2014) (mem. op., not designated for publication), *rev'd on other grounds by* 464 S.W.3d 719 (Tex. Crim. App. 2015).

incarceration." Reitz was incarcerated during the pendency of the case. He showed that he had earned $35,336.65 as a heating, ventilation, and air-conditioning service technician in 2016 and argued that his lengthy pretrial incarceration had taken a financial toll on him. In addition to losing his job, Reitz stated he had lost his residence, vehicle, and good credit. He explained that he suffered anxiety as a result of his incarceration and inability to care for his elderly parents who were in poor health. Because the State did not present evidence to rebut Reitz' prejudice argument, we find that the fourth *Barker* factor weighs in Reitz' favor. *See Stock*, 214 S.W.3d at 767.

Yet, we cannot say that his pretrial incarceration prejudiced him to such a degree to warrant dismissal of the case because, as explained above, he "acquiesced to" some of the delay and "received full credit for his time spent in jail." *See Porter v. State*, 540 S.W.3d 178, 184 (Tex. App.—Houston [1st Dist.] pet. ref'd) (quoting *Starks v. State*, 266 S.W.3d 605, 612–13 (Tex. App.—El Paso 2008, no pet.) ("Appellant 'received full credit for the time he had spent in jail, so his twenty-five-month pretrial incarceration was not, in this case, oppressive.'")); *see also Davis*, 549 S.W.3d at 708; *U.S. v. Casas*, 425 F.3d 23, 34–35 (1st Cir. 2005) (receipt of full-time credit mitigates a claim of prejudice from pretrial incarceration); *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984) (same).

### 5.    Balancing

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003). The eighteen-month delay between Reitz' arrest and trial weighs in favor of finding that Reitz' speedy-trial right was violated. However, Reitz' contribution to the delay, his tardy presentment of the speedy-trial motion, and his request for

12

dismissal weigh against his Sixth Amendment claim. Additionally, Reitz has not shown that any of the prejudice he suffered flowed from an impairment to his defense, and he received credit on his sentence for time served. Accordingly, we hold that the trial court did not err in failing to dismiss the indictment because there was no violation of Reitz' right to a speedy trial. We overrule Reitz' sole issue.

## II. Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     February 14, 2019
Date Decided:      February 28, 2019

Do Not Publish