# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-05-00139-CR

---

**Kenneth Warren Stock, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT**
**NO. CR-01-422, HONORABLE SAM ROBERTSON, JR., JUDGE PRESIDING**

---

### O P I N I O N

This case concerns whether appellant Kenneth Warren Stock was denied his right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005). After Stock was arrested for driving while intoxicated in 2001, his case was repeatedly reset and lingered on the docket for 35 months before it went to trial in 2004. Stock was incarcerated for one year during this time, and he asserted his right to a speedy trial from jail and following his release. The State explained that the delay was due to an overcrowded jury docket. The first trial in 2004 resulted in a mistrial due to a deadlocked jury. Following a second trial in 2005, a jury convicted Stock of felony driving while intoxicated, and the court assessed punishment at 15 years in prison. *See* Tex. Pen. Code Ann. § 49.04 (West 2003) (driving while intoxicated), § 49.09 (West 2006) (enhanced offense).

In light of applicable United States Supreme Court and Texas Court of Criminal Appeals precedent, we conclude that Stock was denied his right to a speedy trial. Accordingly, we reverse the trial court's judgment of conviction and order the prosecution dismissed.

On August 2, 2001, Stock was arrested for driving while intoxicated. He remained incarcerated after his arrest due to an inability to post bond. Stock was charged with felony driving while intoxicated on August 15, 2001. His case was initially set for trial on March 18, 2002. On March 15, 2002, Stock requested and received a continuance based on his need to locate a witness. After two additional postponed trial settings, the State requested and received a continuance on July 3, 2002, due to a conflict with the prosecution of another case.

On August 26, 2002, Stock filed a motion for speedy trial. In his motion, Stock asserted that he would "be prejudiced should trial not be held on or before September 3, 2002, for the reason that he has been held in the Hays County Jail, unable to post bond, for over one year." On September 3, 2002, the trial court held a hearing on the motion for speedy trial, during which Stock's counsel complained that "[Stock] has been in jail since August 2, 2001. We've tried to go to trial—this is the fourth time." As a result of the hearing, the trial judge ordered that Stock be released from jail on a personal recognizance bond. When the State protested, the trial judge explained:

> I understand your position, but he's been in jail for an awfully long time. We're limiting courtroom space. We're doing all we can here. The only just thing to do—we have got a Speedy Trial Act motion here. I'm going to have to let him go completely if I hold him in jail and he's not reached in a reasonable time.

The trial judge then instructed the clerk of the court to mark Stock's case as "some kind of priority case . . . [to] get set on the docket ASAP" and stated that he did not want the case "to be a six-month delay."

2

Despite this instruction by the trial court, Stock's case continued to be repeatedly reset and remained pending on the docket long after the September 3, 2002 hearing. On April 5, 2004, Stock filed a motion to set aside the indictment for failure to afford a speedy trial. A hearing on this motion was held on June 8, 2004, during which both parties agreed that the case had been set for trial a total of nine times. At this hearing, Stock's counsel acknowledged that the court's docket had been overcrowded but argued that "that's no reason for this [case] not to be dismissed." The assistant district attorney for the State responded:

> I think it's clear, and there's been no allegation that the State has made any kind of intentional delay in this case. It's not that we have tried to delay the case in order to somehow impair the defense. Because I think the Court will recognize that it's the overcrowded nature of the jury dockets as well as the fact that jail cases tend to get precedence over individuals who are out on bond, as the defendant in this case has been since he was released in August of 2002, the Courts have referred to this as a neutral reason for the delay and one—while it does weigh against the State, it does not weigh as heavily as in a situation where the State was apparently intending to delay the case in order to prejudice the defense.

The assistant district attorney also argued that Stock's motion should be denied because Stock had not claimed prejudice resulting from the delay. Stock's counsel responded that the length of the delay[1] supported an inference of actual prejudice under *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002), and that Stock could testify regarding direct economic costs, "destruction" of his job, weekly requirements to report to a bonding company and to perform urinalyses, not having a driver's license, and being confined in jail for a year during which time his case was repeatedly reset for trial. The trial judge denied Stock's motion to set aside the indictment for failure to afford a speedy trial and instructed the clerk to make Stock's case "number one" on the docket. He

---

[1] On the date of the June 8, 2004 hearing, Stock's case had been delayed approximately 34 months since his arrest in August 2001.

acknowledged that although the court's backlog created a "questionable call" for his ruling, the District Attorney's office had, in his view, made a good faith effort to get the case tried.

Stock's case was tried to a jury for the first time on July 6, 2004, approximately 35 months after his arrest in August 2001. At the beginning of the trial, Stock re-urged his motion to set aside the indictment for lack of speedy trial and that motion was once again denied. The July 2004 trial ultimately resulted in a mistrial due to a deadlocked jury. After the mistrial, the parties negotiated and entered into a five-year plea agreement. In accordance with the plea agreement, Stock entered a guilty plea at a hearing on August 17, 2004. However, at the sentencing hearing on November 8, 2004, the trial judge advised the parties that he was rejecting the plea agreement. Stock then withdrew his guilty plea, and the case was reset.

A few months later, on January 4, 2005, the case was once again called for jury trial. At this setting, Stock re-urged his motion to set aside the indictment for lack of speedy trial, and the trial judge denied the motion. However, the trial was unable to proceed because not enough jurors arrived for jury selection. On January 28, 2005, Stock filed a first amended motion to set aside the indictment for failure to afford a speedy trial. The case was reset for trial on February 22, 2005, at which time the trial court heard and denied Stock's amended motion. The case was then tried to a jury beginning that day, February 22, and the jury convicted Stock of felony driving while intoxicated. At the punishment hearing on February 25, 2005, the court sentenced Stock to 15 years in prison.

On appeal, Stock asserts that he was denied his right to a speedy trial under the federal and state constitutions and state law. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05. We apply a bifurcated standard of review to Stock's constitutional speedy-trial claim. *See Zamorano*, 84 S.W.3d at 648 (citing *State v. Munoz*, 991

4

S.W.2d 818, 821 (Tex. Crim. App. 1999)). Specifically, we review the trial court's decision under "an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id.* Because the facts of this case are undisputed, the primary issue concerns the legal significance of the facts to Stock's claim that he was unconstitutionally denied a speedy trial. *See id.*

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the United States Supreme Court held that a balancing test must be used in determining whether an accused has been denied his federal constitutional right to a speedy trial. Although the right to a speedy trial under the Texas Constitution is independent of the federal guarantee, the Texas Court of Criminal Appeals has held that a balancing test identical to the one established in *Barker* is to be used in determining whether a defendant has been denied his state constitutional right to a speedy trial. *Deeb v. State*, 815 S.W.2d 692, 704 (Tex. Crim. App. 1991).

The *Barker* balancing test weighs the following four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Rivera v. State*, 990 S.W.2d 882, 889 (Tex. App.—Austin 1999, pet. ref'd). No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

**Length of Delay**

The length of the delay is measured from the time the defendant is arrested or formally accused. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). Generally, any delay over one year has been held sufficient to trigger the speedy-trial inquiry. *Shaw*, 117 S.W.3d at 889. In this case, Stock was arrested and indicted for felony driving while intoxicated in August 2001. He was incarcerated for

this offense from August 2001 until September 2002. He did not go to trial (for the first time) until July 6, 2004, approximately 35 months after his arrest. He was not convicted until February 2005, approximately 42 months after the arrest. The State concedes that this length of delay in the prosecution of Stock's case is sufficient to trigger the speedy-trial inquiry. Therefore, the burden of excusing the delay rests with the State. *See Rivera*, 990 S.W.2d at 889.

### *Reason for the Delay*

A related issue is the reason the government offers to justify the delay. *Zamorano*, 84 S.W.3d at 649. Courts assign different weights to different reasons. *Id.* For example, a deliberate attempt to delay the trial in order to hamper the defense will weigh heavily against the State, while a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* (quoting *Barker*, 407 U.S. at 531).

In *Shaw v. State*, the defendant was indicted in December 1997 for aggravated sexual assault of a child. *See* 117 S.W.3d at 886. After one trial resulted in a hung jury, the case was not retried until February 2001. *Id.* On appeal, the defendant asserted a speedy-trial violation. *Id.* at 889. The State offered two reasons to justify the 38-month delay between the defendant's indictment and the second trial: the defendant's motions for continuance and the crowded court docket. *Id.* The court of criminal appeals held that although the defendant was responsible for several months of the delay, "a crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily." *Id.* at 890. The court then concluded that because "the State did not justify

6

most of the lengthy delay in this case, . . . this factor, too, weighs in favor of finding a violation of [the defendant's] right to a speedy trial." *Id.*

Here, the State argues that Stock's request for a continuance in March 2002, as well as an overcrowded jury docket, justified the 35-month delay between Stock's indictment and the first trial in July 2004.[2] While Stock's request for continuance made him responsible for some portion of the delay, the record shows that Stock's requested delay was brief (sufficient time to locate a witness) and Stock was ready to proceed with trial in relatively short order. The record reflects that the State also requested a continuance during this time frame. Additionally, at the September 3, 2002 hearing on Stock's motion for speedy trial, the trial court acknowledged that the docket was overcrowded and instructed both the clerk and the prosecutor to give Stock's case preferential treatment to avoid a "six-month delay." Nevertheless, the case was delayed for an additional 22 months after this hearing before going to trial in July 2004. The State offers no explanation for this delay except for the court's overcrowded docket. Although this justification is not weighed heavily against the State, it is, nevertheless, weighed against the State because it is the government's responsibility to bring criminal cases to trial. *See Zamorano*, 84 S.W.3d at 649. On this record, we find that the State has not justified the lengthy delay between Stock's indictment in August 2001 and the first trial in July 2004.

---

[2] The State further explains that the delay between the July 2004 mistrial and the second trial in February 2005 resulted from Stock's second request for a continuance in August 2004, the parties' good faith negotiations resulting in a failed plea agreement in November 2004, and a single reset due to a small jury turnout at the January 2005 trial setting. For purposes of this appeal, we do not weigh the delay caused by these events against the State. Therefore, the issue in this appeal is whether the State can justify the 35-month delay between Stock's indictment and his first trial in July 2004.

***Assertion of the Right***

A defendant's assertion in the trial court of his right to a speedy trial "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "Failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. A defendant's request for a dismissal rather than a prompt trial setting "may attenuate the strength of his claim." *State v. Rangel*, 980 S.W.2d 840, 844 (Tex. App.—San Antonio 1998, no pet.). Nonetheless, a defendant has no duty to bring himself to trial. *Id.*

Stock filed a motion for speedy trial in August 2002 requesting that his case be set for trial on or before September 3, 2002. At this point, he had been incarcerated and unable to post bond for one year. After that motion was denied, the court reset the trial several times. Stock claims that he was ready at each of these settings. The prosecution does not dispute Stock's claim of readiness. On April 5, 2004, Stock filed a motion to dismiss the indictment for failure to afford a speedy trial. A hearing on this motion was held on June 8, 2004, during which both parties agreed that the case had been set for trial a total of nine times. After the trial judge rejected the plea agreement in November 2004, Stock filed an amended motion to set aside the indictment for lack of speedy trial on January 28, 2005.

In sum, the record shows that the State was on notice of Stock's assertion of his right to a speedy trial beginning in August 2002, but failed to act in any meaningful way to effect a speedy trial during the 22 months following Stock's first motion. Indeed, the State did not act quickly until Stock filed a motion seeking dismissal of the indictment on speedy trial grounds in June 2004. He then re-asserted his speedy trial claim in January 2005. Although two out of his three motions

8

sought dismissal rather than a trial setting, the record shows that Stock participated in two jury trials in July 2004 and February 2005. On this record, we find that Stock sufficiently asserted his right to a speedy trial.

**Prejudice Caused by the Delay**

The right to a speedy trial is designed to protect three discernible interests: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) limitation of the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532. A showing of actual prejudice to these interests is not required. *Rangel*, 980 S.W.2d at 844. Rather, the defendant need only make "some showing" that he has been prejudiced by the delay. *Id.*

In this case, Stock makes a strong showing of prejudice caused by the delay. First and foremost, he was incarcerated for one year awaiting trial. The record shows that during that year, the trial was reset four times. At the September 3, 2002 hearing on Stock's motion for speedy trial, the trial judge acknowledged that Stock had been in jail "an awfully long time" and that "I'm going to have to let [Stock] go completely if I hold him in jail and he's not reached in a reasonable time." In addition to pretrial incarceration, Stock testified at the February 2005 trial that the delay had caused substantial interference with his employment prospects and that the economic costs and inconvenience of traveling back and forth for urinalyses and trial settings were burdensome.[3] The State has failed to contradict or rebut Stock's assertions of prejudice. Accordingly, we find that

---

[3] The record reflects that Stock had moved his permanent residence to Florida.

Stock has met his burden of showing prejudice and that this factor weighs in favor of finding a speedy-trial violation.

### *Conclusion*

We find that all four factors articulated in *Barker* weigh in favor of relief. First, both parties agree that the 35-month delay between Stock's indictment and the first trial was sufficient to trigger a speedy-trial inquiry. Second, the primary cause for the delay was an overcrowded docket, which we must weigh against the State. Third, Stock repeatedly asserted his right to a speedy trial. Finally, Stock produced evidence of prejudice that the State failed to rebut. Because we find that Stock's constitutional right to a speedy trial was violated, we reverse Stock's conviction and order the prosecution dismissed. *See* Tex. Code Crim. Proc. Ann. art. 28.061 (West 2006).

_____

G. Alan Waldrop, Justice

Before Justices Pemberton, Waldrop and B. A. Smith*

Reversed and Dismissed

Filed:   January 22, 2007

Publish

* Before Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).

10