

# NUMBER 13-22-00319-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                      Appellant,

v.

LOUIS RAMOS,                                                             Appellee.

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Tijerina**

Appellant the State of Texas appeals the trial court's grant of appellee's motion to dismiss on the basis that appellee's right to a speedy trial had been violated.[1] *See* U.S. CONST. amend. 6; TEX. CONST. art. 1, § 10. By two issues, the State contends that

---

[1] The State is allowed to appeal the trial court's dismissal of an indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(1).

appellee Louis Ramos failed to present evidence of his speedy trial claim, and "[t]he trial court erred in granting [his] motion to set aside the indictment without a meaningful hearing." We reverse and remand.

## I. PERTINENT FACTS

On February 12, 2019, Ramos was arrested on suspicion of committing the offense of aggravated sexual assault of a child. The cause was assigned to the trial court that day. On February 14, 2019, the trial court ordered bail conditions pending trial, which included, among other things, that Ramos not commit another offense, that Ramos remain in Nueces County, Texas, that Ramos report changes in his address and job, and that Ramos report to the pretrial community supervision officer once per week by phone and once per month in person. Additionally, Ramos was ordered to pay $60 per month in fees and to wear an electronic monitoring device at his own expense.

On January 5, 2022, the trial court held a hearing to determine whether to remove Ramos's electronic monitoring device or to otherwise modify the conditions of bail pending trial. After discussing the issue, the trial court ordered that the monitoring device be removed as a condition of Ramos's bail.

The trial court asked the State if the case was a "pre-file" case, to which the State replied, "It is. . . . I don't know if by mistake or not, but I pulled it this morning, so I will definitely get it to the first grand jury, once they get impaneled in a few weeks." The parties acknowledged that Ramos had been on pretrial for three years. The trial court stated, "Let's look at this case and see if it can't be resolved, that's just ludicrous. I don't know who dropped the ball, but I'm not interested in it . . . continuing in the pattern that it has

2

been."

On May 20, 2022, the State indicted Ramos for the offenses of one count of super aggravated sexual assault of a child, four counts of aggravated sexual assault of a child, and one count of indecency with a child, which the State alleged all occurred on June 21, 2018. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(iii), (f)(1); 22.021(a)(1)(B)(iii), (2)(B); 21.11(a)(1). The indictment alleged that Ramos contacted the sexual organ of a child under six with his mouth four times, touched the child's genitals once, and contacted the sexual organ of another child with his mouth once.

On July 1, 2022, Ramos filed a motion to set aside the indictment for failure to afford Ramos his constitutional right to a speedy trial. On July 5, 2022, Ramos was arraigned and pleaded not guilty, and the trial was set for August.

On July 15, 2022, the trial court held a pre-trial hearing on Ramos's motion to dismiss. The State informed the trial court that Ramos had not filed a motion for a speedy trial. The trial court stated that because Ramos had been indicted on May 20, 2022, and the trial was set for August 23, 2022, there had not been a need for a motion for a speedy trial. Ramos's trial counsel argued that the speedy-trial time-period begins when the person is arrested and not on the date that a person is indicted. Ramos's trial counsel indicated that in November 2018, she notified the police department that Ramos "was experiencing extreme anxiety at that time"; nonetheless, the State did not indict Ramos until May 2022. Ramos's trial counsel stated, "[Ramos] was under extreme pre[-]trial conditions. He wore a GPS monitor for three years." According to Ramos's trial counsel, Ramos "reported to pre[-]trial during all of this time," and "[h]is wife has a lung transplant,

3

a full lung transplant, and monies were extremely limited, and the GPS device was extremely expensive." Ramos's trial counsel pointed out that "this is not a complex case. This is not a case where there were a lot of co-defendants or a lot of evidence."

The State responded that "[i]t takes some time for the investigation to be complete, so that did take some time by the law enforcement officers, to conduct their investigation, to wait for CPS [child protective services]." The State explained, "It takes some time for them to gather reports, to gather records, gather CPS, so the case was brought to our office in February of 2019, that's when it . . . arrived in our office." According to the State, the delay was not intentional and "Covid has put a huge delay in us being able to move forward with cases, in us being able to . . . process cases, so that has been a huge delay for the past year-and-a-half to two years." The State re-urged its argument that Ramos had not previously asserted his right to a speedy trial and argued that Ramos had not suffered any prejudice due to the delay. The trial court asked why Ramos's reporting to his supervision officer and payment of $60 per month did not constitute prejudice.

Ramos's trial counsel responded that the prejudice in this case is presumptive due to the delay and argued that he is not required to "remind the State to indict" him. Ramos's trial counsel said, "Impairing the Defense is the most serious type of prejudice because the inability of a Defendant adequately to prepare his case skews the fairness of the entire system." Ramos's trial counsel claimed, "Proof of actual prejudice is not required when the delay is excessive because such a delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." Ramos's trial counsel then explained that "[Ramos's] wife is extremely ill[,]" which has "compromised her ability to

remember." Ramos's trial counsel said, "She has extreme anxiety because this was coupled with financial issues, where they were worried that they could not even afford all of her mental care." According to Ramos's trial counsel, Ramos "is the sole breadwinner" and he also "suffered extreme anxiety." Additionally, Ramos's trial counsel argued "there were electronic communications from years back, where the mother of the victim, who basically is the only one with information concerning the three-year-old, and that's charged as super aggravated, where she threatened" Ramos. According to Ramos's trial counsel, those emails "are long gone, he doesn't even know where they are anymore, it's been so many years." Ramos's trial counsel stated that their theory of the case that the mother of the victim coached the victims "has [been] severely hampered" because "all this time" has "given the mother much more time for coaching, which is something that cannot be measured through cross-examination but that we know occurred." Ramos's trial counsel reminded the trial court that it had instructed the State to indict Ramos within two weeks of its January 5 hearing, and the State did not do so and instead waited until "the end of May" to indict him.

The State responded as follows:

Your Honor, I would just like to state that I do not recall, and [Ramos] did not attach as an exhibit any Court record from the time that we were before the Court in January of 2022, where the Court instructed me to bring this to a grand jury within two weeks. I don't recall the Court giving me a time[-]line for that. I recall being before the Court about removal of the GPS monitor. I do not recall the Court instructing me to present it to the grand jury within two weeks. Again, there is no attachment of an exhibit of the court reporter's record of that hearing, and so I don't recall that, being instructed by the Court, Judge.

5

Ramos's trial counsel reminded the trial court that the prosecutor currently arguing had not been at the January hearing. The trial court stated the following:

> All right. What I'm ascertaining here, and I—you know, I have to tell you, [State], I hear the Covid defense so much in these courtrooms. But I will tell you, he was arrested in February of '19. We didn't have—we closed these Courts—well, we closed the actual trials in the courtroom in March of 2020; that means you had 13 months to indict this case. It was not indicted before Covid. Then when Covid hit, we were all working from home, which means we did not have the burden of having to prepare for trials or do that, there was plenty of time. We're talking three years between the time of his arrest and the time of the indictment, more than three years.
>
> I am going to grant the motion. I'm going to order that this case be dismissed with prejudice, in the fact that the State did not accord this man a right—his constitutional right to a speedy trial. They were not ready until March of 2022.

The trial court filed findings of fact and conclusions of law as follows:

1. The Court finds that Louis Ramos has the right to a speedy trial.

2. Louis Ramos was deprived of his right to a speedy trial.

3. As a remedy to Louis Ramos'[s] being deprived of his right to a speedy trial, the charging instrument was dismissed.

4. The Court resolved any disputed fact issues in favor of Louis Ramos.

5. The length of delay from the time Louis Ramos was arrested until Louis Ramos asserted his right to a speedy trial is presumptively prejudicial.

6. Louis Ramos became a suspect in June of 2018 for this offense when the children's mother contacted law enforcement regarding an alleged outcry by the two alleged victims.

7. Louis Ramos exercised his right to remain silent, via his attorney, to the Corpus Christi Police Department and to the CPS investigator during their investigation in 2018.

8. CPS records reflect that on or about October of 2018, Louis Ramos'[s] attorney advised the CPS investigator he was exercising

his right to remain silent and was traumatized by the accusations.

9.  On or about February 11, 2019, an Affidavit/Complaint was filed for Aggravated Sexual Assault of a Child involving the alleged "3 year old" victim and alleged "7 year old" victim by oral sexual assault, the alleged outcry witness was the mother, the complaint did not mention any physical findings nor any confessions nor any prior history or allegations of this nature, the complaint stated the 7 year old did outcry to the CAC [child advocacy center] and bond was set at $75,000.

10.  As a condition of bond, Louis Ramos was ordered to wear a GPS monitor beginning in February of 2019.

11.  On or about March 1, 2019, Louis Ramos filed a Motion to Modify Bond Restrictions advising he and his wife resided in a home approximately 700 feet from Collier Park, his wife had a lung transplant, he was gainfully employed, complying with bond conditions and requesting that he be allowed to continue to reside in his home.

12.  On or about January 5, 2022, Louis Ramos appeared for a pre[-]trial probation review Hearing in which his electronic GPS device was ordered to be removed. The State appeared at the Hearing.

13.  The State presented Louis Ramos'[s] case to the Grand Jury on May 20, 2022, and he was indicted.

14.  The Indictment was returned by the Court on or about June 6, 2022.

15.  Louis Ramos filed a Motion to Dismiss based upon his right to a speedy trial being violated in the trial court on or about July 1, 2022.

16.  On or about July 15, 2022, the Court dismissed the Indictment."

This appeal by the State followed.

## II.    ERROR PRESERVATION

As a preliminary matter, Ramos asserts that the State failed to object, and it therefore waived its right to appeal from the trial court's dismissal. However, Ramos does not provide authority, and we find none, requiring that the State must lodge an objection

7

when the trial court grants a defendant's motion to dismiss.

Moreover, although generally a party must present a timely objection in the trial court, state the specific grounds for the objection, and obtain a ruling to preserve error for appellate review, *see* TEX. R. APP. P. 33.1, the State is not required to object to a dismissal of a complaint to appeal the same. *See State v. Lohse*, 881 S.W.2d 171, 172 (Tex. App.—Houston [1st Dist.] 1994, no pet.) ("The State need not comply with [the predecessor to Texas Rule of Appellate Procedure 33.1], which applies to evidentiary rulings, to preserve its right to appeal a dismissal of an information."); *State v. Morales*, 804 S.W.2d 331, 333 (Tex. App.—Austin 1991, no pet.) ("We conclude that the State did not[, by failing to object at trial,] waive its right to complain, on appeal, of the trial court's dismissal."); *State v. Garrett*, 798 S.W.2d 311, 313 (Tex. App.—Houston [1st Dist.] 1990) ("The basis of the State's appeal under [A]rticle 44.01(a)(1) is the trial court's *order* setting aside the indictment . . . not an objection by the State under [the predecessor to Rule 33.1]."), *aff'd*, 824 S.W.2d 181 (Tex. Crim. App. 1992); *see also State v. Garcia*, 638 S.W.3d 679, 681 (Tex. Crim. App. 2022) ("[T]he State may also appeal an order of a court in a criminal case that dismisses an indictment, information, or complaint or any portion of an indictment, information or complaint."). Accordingly, we conclude that the State was not required to object under Texas Rule of Appellate Procedure 33.1 or any other rule to appeal the trial court's dismissal of its indictment.

Nonetheless, although the State did not say that it "objected" to the trial court's dismissal, it argued against granting it. Specifically, the State argued that Ramos had not previously asserted his right to a speedy trial, so it was waived, and Ramos had not

8

suffered any prejudice due to the delay. The State also defended the delay in indicting Ramos by arguing that the case was complicated, and the restrictions set out during Covid had hampered its efforts. Thus, we cannot conclude, even assuming the State was required to dispute the motion for dismissal of the indictment, that the State failed to apprise the trial court of its disapproval of its grant of the trial court's ruling.

### III.   APPLICABLE LAW AND STANDARD OF REVIEW

A defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Texas Constitution. U.S. CONST. amend. 6; TEX. CONST. art. 1, § 10; *see State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). We determine whether a speedy trial violation occurred on an "ad hoc basis" by considering the following four "*Barker* factors": (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lopez*, 631 S.W.3d at 113. To that effect, we must conduct "a difficult and sensitive balancing process," wherein the conduct of both the prosecutor and the defendant must be weighed. *Barker*, 407 U.S. at 533; *see State v. Reyes*, 162 S.W.3d 267, 268 (Tex. App.—San Antonio 2005, no pet.).

"The defendant's burden of proof on the latter two [*Barker*] factors 'varies inversely' with the State's degree of culpability for the delay." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81. The State prevails by justifying the length of delay while a defendant prevails by proving the assertion of the

9

right and showing prejudice. *Id.* at 280.

A delay that is unreasonable enough to be "presumptively prejudicial" triggers the *Barker* test. *Id.* at 281. "Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Id.* "[T]he four factors are related and must be considered together along with any other relevant circumstances. As no factor possesses 'talismanic qualities,' courts must engage 'in a difficult and sensitive balancing process' in each individual case." *Id.*

We must not apply a "wooden application" of the *Barker* factors because "dismissal of the charges is a radical remedy" and such an application "would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id.* (citing *United States v. Ewell*, 383 U.S. 116, 121 (1966)). Accordingly, we "must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when *the evidence* shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* (emphasis added). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

The standard of review we apply to a trial court's dismissal of a charging instrument to remedy a constitutional violation is an abuse of discretion. *State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998). We review whether there has been a speedy trial violation under a bifurcated standard of review: "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Cantu*, 253 S.W.3d at 282. We balance the *Barker* factors as a "purely legal question." *Id.* "Where

10

there is no constitutional violation, or where the defendant's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the indictment without the consent of the State." *State v. Hill*, 558 S.W.3d 280, 284 (Tex. App.—Dallas 2018, no pet.) (citing *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003)).

> Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts. In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. And all of the evidence must be viewed in the light most favorable to his ultimate ruling.

*Cantu*, 253 S.W.3d at 282.

### IV. THE LENGTH OF DELAY AND REASON FOR THE DELAY

The right to a speedy trial "attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Id.* at 280. Here, Ramos was arrested on February 12, 2019. The State indicted Ramos on May 20, 2022.

Viewing the evidence in the light most favorable to the trial court's ruling, the delay caused by the State was not excused. The trial court was free to disbelieve the State when it argued that it had not indicted Ramos due to the Covid restrictions because as the trial court pointed out, Ramos was arrested in February 2019 and the Covid restrictions were enacted in March 2020, approximately one year later. And the trial court was free to believe that the State caused the delay due to negligence because the State did not offer any other plausible explanation for its delay in indicting Ramos. Moreover,

11

the *Barker* factors were triggered because the delay was over two years. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) ("In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the Barker enquiry.'"). Thus, the length of the delay and the reasons for the delay weigh in favor of the trial court's finding that Ramos's speedy trial rights were violated. *See id.*

### V. RAMOS'S ASSERTION OF HIS RIGHT TO A SPEEDY TRIAL

"The nature of the speedy-trial right makes 'it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants.'" *Cantu*, 253 S.W.3d at 282. Moreover, it is the State's and not the defendant's duty to bring the defendant to trial. *Id.* However, it is incumbent on a defendant to assert his right to a speedy trial. *Id.*

> Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them. "The more serious the deprivation, the more likely a defendant is to complain." Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure.

*Id.* at 282–83.

Ramos was indicted on May 20, 2022, and he asserted his speedy-trial complaint for the first time in a motion to dismiss less than two months later on July 1, 2022. At the dismissal hearing, Ramos did not set out how and if he had done anything to assert his right to a speedy trial or get the case moving forward. *See id.* at 283. Thus, there was no evidence before the trial court concerning what Ramos did prior to the indictment to assert

12

his right to a speedy trial. *See id.* ("Although one cannot file a motion for a speedy trial until formal charges are made, the right to one can be asserted in other ways.").

Under similar facts as here, the Texas Court of Criminal Appeals stated that the "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge" and "[b]ecause appellant never asked for a speedy trial—he asked only for a dismissal—it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner." *Id.* at 283–84. Ramos had a choice of either waiting until he was charged, then filing a motion for a speedy trial, and, if denied, then filing a motion to dismiss because he had diligently sought a speedy trial. *Id.* at 284. Or Ramos could have waited until being charged and simply filed a motion to dismiss if he had been able to show "that he diligently tried to move the case into court before formal charges were filed." *Id.*

Ramos never requested a speedy trial; and instead, he sought only an outright dismissal after being charged. Ramos did not attempt to prove that he acted on the desire for a speedy resolution before he was charged, which is the bulk of when the delay occurred. *Id.* at 285. Therefore, there is nothing in the record for the trial court to have made such a finding. Accordingly, this factor weighs against the trial court's finding that Ramos's right to a speedy trial was violated. *See id.*

## VI. PREJUDICE

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Id.* We analyze prejudice in light of the following interests: "(1) to prevent

oppressive pre[-]trial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Id.* When the delay is presumptively prejudicial and the defendant has asserted his right to a speedy trial, the State has the burden to rebut that the defendant has been prejudiced. *See Gonzales v. State*, 435 S.W.3d 801, 815 (Tex. Crim. App. 2014) (agreeing with the lower court's conclusion that because the defendant "did not acquiesce in the delay because . . . he asserted his rights once he was aware of the indictment against him," the State was required to rebut the presumptive prejudice (citing *Gonzales v. State*, No. 04-11-00405-CR, 2013 WL 4500656, at *6 (Tex. App.—San Antonio Aug. 21, 2013) (mem. op., not designated for publication))). Nonetheless, the presumption of prejudice is extenuated by the defendant's acquiescence in the delay. *See Doggett v. United States*, 505 U.S. 647, 658 (1992).

There is no evidence that Ramos was incarcerated. Ramos's trial counsel stated that Ramos felt anxious during the delay, but Ramos did not testify. *See Gonzales* , 435 S.W.3d at 811 ("We have held that statements of an attorney on the record may be considered as evidence only if the attorney 'is speaking from first-hand knowledge.'"). Nonetheless, there is no evidence that Ramos's anxiety exceeded the level normally associated with a criminal charge. *See Cantu*, 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.").

The record reflects that Ramos had to report weekly by phone to his supervision

14

officer and monthly in person. In *Cantu*, the court stated that a requirement to call a bondsman every week constituted, "at worst, a minor inconvenience." *Id.* Likewise here, Ramos did not present any evidence that these requirements were more than a minor inconvenience. *See id.* Additionally, Ramos was ordered to wear a monitor for some time prior to the indictment. However, Ramos presented no evidence that doing so was more than a minor inconvenience. *See id.*

There is no evidence that Ramos lost his job or that his work schedule was disrupted. *See id.* There is no evidence that Ramos was required to make numerous fruitless and costly trips to court; lost wages or time away from his work; suffered from public criticism by a lengthy pendency of formal criminal charges against him; or that he filed requests for a speedy trial that were denied or ignored. *See id.* In "*Stock v. State*, prejudice was shown by the defendant's one-year pretrial incarceration, interference with his employment prospects and the burdensome economic costs and inconvenience of traveling back and forth for urinalyses and trial settings." *Id.* at 286 (citing *Stock v. State*, 214 S.W.3d 761, 766-67 (Tex. App.—Austin 2007, no pet.)). Here, although Ramos paid for the monitor, there is no evidence he suffered from any of these burdens that the defendant in *Stock* suffered. *See id.*

Finally, Ramos's trial counsel stated that "[i]mpairing the Defense is the most serious type of prejudice because the inability of a Defendant adequately to prepare his case skews the fairness of the entire system." Ramos's trial counsel claimed that Ramos's wife was very ill which had "compromised her ability to remember." Additionally, Ramos's trial counsel stated that "electronic communications" had been lost "where the mother of

15

the victim, who basically is the only one with information concerning the three-year-old, and that's charged as super aggravated, where she threatened" Ramos. Ramos's trial counsel said that the theory of the case that the mother of the victims coached them had been "severely hampered" and that the mother has had more time to coach the children "which is something that cannot be measured through cross-examination[,] but that we know occurred."

Relying on the Fifth Circuit in *United States v. Palmer*, the court of criminal appeals said, "the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *Id.* at 283–84 (quoting 537 F.2d 1287, 1288 (5th Cir.1976) (internal quotations omitted). The *Cantu* court explained that "[b]ecause the defendant in *Palmer* 'first asserted his right thirty months after his arrest, which was one month after he first received notification of his indictment, and he complained at that time only of the 22–month pre-indictment delay,' his 'silence during the entire pre-indictment period works against him because it suggests that any hardships he suffered were either minimal or caused by other factors.'" *Id.* at 284.

Likewise, here Ramos was silent during the entire pre-indictment period, which is not sufficient to demonstrate prejudice because it suggests that any hardship that he suffered was either minimal or caused by other factors. *See id.* Moreover, any presumption of prejudice is extenuated by a defendant's longtime acquiescence in the delay. *See id.*; *Dragoo*, 96 S.W.3d at 315 (stating that a "presumption of prejudice [had been] extenuated by [the defendant's] longtime acquiescence in the delay" and concluding that he had not shown prejudice even though the delay had been

16

presumptively prejudicial to his defense). Thus, under *Barker*, evidence of Ramos's failure to diligently and vigorously seek a rapid resolution is entitled to "strong evidentiary weight." *See Cantu*, 253 S.W.3d at 284; *see also Pool v. State*, No. 07-18-00358-CR, 2020 WL 4260377, at *9 (Tex. App.—Amarillo July 14, 2020, pet. ref'd) (mem. op., not designated for publication) (explaining that it is the defendant's burden to demonstrate how the length in the delay prejudiced his defense (citing *Porter v. State*, 540 S.W.3d 178, 184 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("Porter did not identify any specific problems due to faded memories or to the delay, and he has not shown how any lapses of memory are in some way significant to the outcome of his case."))). Therefore, this factor weighs against a finding that Ramos's right to a speedy trial was violated. *See Porter*, 540 S.W.3d at 183 (explaining that the defendant could not "rely on presumptive prejudice because any such prejudice was extenuated by [the defendant's] role or acquiescence in the delay" by seeking dismissal as opposed to first filing a motion for a speedy trial).

## VII.    BALANCING THE FACTORS

In our de novo review of the trial court's ruling and our balancing of the *Barker* factors, we conclude that as a matter of law, Ramos was not denied his Sixth Amendment right to a speedy trial. *See Cantu*, 253 S.W.3d at 286. Thus, the evidence does not support the trial court's dismissal of the indictment against Ramos, and we conclude that it abused its discretion by granting Ramos's motion to dismiss. *See Porter*, 540 S.W.3d at 183. We sustain the State's first issue.[2]

---

[2] We need not address the State's second issue as it is not dispositive. *See* TEX. R. APP. P. 47.4.

## VIII. CONCLUSION

We reverse the trial court's judgment and remand for proceedings consistent with this memorandum opinion.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of October, 2023.

18