

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00135-CR

LAUREN IRENE GANNON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 25th District Court
Guadalupe County, Texas
Trial Court No. 20-2172-CR-C

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

After the trial court denied her motion to dismiss for violation of her right to a speedy trial, Lauren Irene Gannon entered an open plea of guilty to delivery of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams.[1] After a punishment hearing, the trial court found Gannon guilty and sentenced her to twenty years' imprisonment. Gannon appeals the trial court's denial of her motion to dismiss for violation of her right to a speedy trial. We will affirm the trial court's judgment.

## I. Background

Gannon was arrested on September 5, 2019, and charged with the manufacture or delivery of a controlled substance in penalty group 1 in an amount of four grams or more but less than 200 grams. About thirteen months later, a Guadalupe County[2] grand jury indicted Gannon for that offense. One week after Gannon was indicted, the Guadalupe County Sheriff's Office (GCSO) sent evidence collected from Gannon to the Texas Department of Public Safety (TDPS) Crime Laboratory in Austin for analysis. After analysis, that evidence and the results of the analysis were returned to the GCSO on April 28, 2022.

Gannon filed her motion to dismiss for violation of her speedy trial right under the United States and Texas Constitutions on July 28, 2021. Apparently, this case was first set for trial on December 5, 2022, about seven months after the State received the results of the TDPS

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Supp.).

[2]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Fourth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

laboratory analysis. The trial was continued on the State's motion and reset for January 17, 2023. Although the State filed a second motion for continuance, the trial court denied the motion. Nevertheless, another case went to trial the week of January 17, and this case was reset for February.

On January 31, 2023, the trial court heard Gannon's motion to dismiss. Gannon and her mother were the only witnesses.[3] After hearing their testimony and the parties' argument, the trial court denied the motion. Gannon then entered an open plea of guilty on February 7, 2023, and after a punishment hearing on April 25, 2023, the trial court found her guilty of the offense and sentenced her to twenty years' imprisonment.

## II. The Right to a Speedy Trial and Standard of Review

An accused's right to a speedy trial is guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution. *Velasco v. State*, 678 S.W.3d 258, 263 (Tex. App.—San Antonio 2023, no pet.) (citing *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)). The right "attaches once a person becomes an 'accused'—that is, once [s]he is arrested or charged," whether by information or indictment. *Id.* (quoting *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008)). We "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the four *Barker v. Wingo*[4] factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the

---

[3]We discuss the relevant portions of their testimony in our prejudice analysis, below.

[4]407 U.S. 514, 530 (1972).

right, and 4) prejudice to the accused."[5] *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (quoting *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). Although "the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Id.* (citations omitted).

In our review of a "speedy trial claim, 'we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components.'" *Velasco*, 678 S.W.3d at 263 (quoting *Zamorano*, 84 S.W.3d at 648). "Because [Gannon] did not request findings of fact and conclusions of law, we imply all findings necessary to support the trial court's ruling if those findings are supported by the record." *State v. Lopez*, 631 S.W.3d 107, 114 (Tex. Crim. App. 2021) (citing *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016)). Also, "we must presume the trial court resolved any disputed fact issues in the State's favor." *Zamorano*, 84 S.W.3d at 647 (citing *Munoz*, 991 S.W.2d at 821).

## III. Analysis

### A. Length of Delay

The length of delay is measured between the initial arrest or charge and either trial or the demand for a speedy trial. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016); *Zamorano*, 84 S.W.3d at 648. "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Id.* (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). "The extent to which the delay exceeded the minimum

---

[5]Although "[t]he Texas constitutional speedy trial right exists independently of the federal guarantee, . . . [Texas courts] ha[ve] traditionally analyzed claims of a denial of the state speedy trial right under the factors established in *Barker v. Wingo*," which are used to analyze the guarantee of the right to a speedy trial under the United States Constitution. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992)).

4

needed to trigger judicial examination factors into our assessment of the first *Barker* factor." *Id.* (citing *Dragoo*, 96 S.W.3d at 314).

The delay between Gannon's arrest and her asserting her right to a speedy trial was over one year and ten months. On the other hand, the delay between her arrest and the plea hearing was three years and five months. As a result, this delay "'stretched far beyond the minimum needed to trigger the [*Barker*] enquiry,' and weighed heavily in favor of finding a violation of the speedy trial right." *Id.* (citing *Dragoo*, 96 S.W.3d at 314) (delay of three and one-half years).

### B.     Reason for the Delay

When we assess the reasons for the delay, "we assign different weights to different reasons." *Id.* at 768. "Deliberate delay intended to 'hamper the defense' weighs heavily against the State, while more neutral reasons, such as negligence or overcrowded courts, weigh less heavily." *Id.* (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)). "Additionally, we consider 'whether the government or the criminal defendant is more to blame for th[e] delay.'" *Id.* (alteration in original) (quoting *Brillion*, 556 U.S. at 90). "Delay caused by either the defendant or his counsel weighs against the defendant." *Id.* (citing *Brillion*, 556 U.S. at 90–91). "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id.* (quoting *Dragoo*, 96 S.W.3d at 314).

At the hearing on Gannon's motion to dismiss, the State argued that the relevant time for considering a speedy-trial violation began when Gannon was indicted. In its brief on appeal, the State argues that the Texas Supreme Court's emergency orders regarding COVID-19 placed

5

limitations on the trial court's ability to hold jury trials but concedes that it did not provide any evidence on how those orders impacted the State's ability to indict Gannon. We agree, and because the State offered no reason for the delay between Gannon's arrest and the indictment, we find that that time weighs against the State, but not heavily.

The record shows that evidence obtained from Gannon as a result of her arrest was in possession of the TDPS Crime Laboratory in Austin from October 8, 2020, until April 28, 2022, pending its forensic analysis. Although this delay was not caused by the State, it nonetheless is attributable to the State's resources and is similar to overcrowded courts or a backlog of cases. *See State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.). As a result, it weighs against the State, but not heavily.

The State offered no evidence or explanation for the delay between April 28, 2022, when the evidence and the results of the analysis were returned to the State, and December 5, 2022, the first trial setting. As a result, this delay weighs against the State, but not heavily.

The State requested a continuance of the December 5 setting based on missing evidence, which was granted by the trial court. The trial was reset for January 17, 2023, and the State's second motion for continuance was denied. However, a different case with priority went to trial that week, and this case was reset for February. The motion to dismiss was heard on January 31, 2023. Because this delay was caused by neutral reasons, it weighs against the State, but not heavily.

In sum, this factor weighs in favor of finding a speedy-trial violation, but not heavily.

6

### C.     Assertion of the Right to a Speedy Trial

"[T]he defendant has no duty to bring [her]self to trial; that is the State's duty." *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 527). "This does not mean that the defendant has *no* responsibility to assert h[er] right to a speedy trial." *Id.* (citing *Barker*, 407 U.S. at 527). "Whether and how a defendant asserts h[er] speedy trial right is closely related to the other three factors because the strength of h[er] efforts will be shaped by them." *Id.* (citing *Barker*, 407 U.S. at 531). "Therefore, the defendant's assertion of h[er] speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* (citing *Barker*, 407 U.S. at 531–32).

A defendant does not waive her right to a speedy trial by failing to timely assert it. *Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003). But, "failure to assert the right . . . make[s] it difficult for a defendant to prove [s]he was denied a speedy trial." *Id.* at 314 (first alteration in original) (quoting *Barker*, 407 U.S. at 532). "A defendant's lack of a timely demand for a speedy trial indicates strongly that [s]he did not really want one." *Balderas*, 517 S.W.3d at 771 (citing *Dragoo*, 96 S.W.3d at 314). "The longer the delay becomes, 'the more likely a defendant who wished a speedy trial would be to take some action to obtain it.'" *Id.* (quoting *Dragoo*, 96 S.W.3d at 314). For that reason, "inaction weighs more heavily against a violation the longer the delay becomes." *Id.* (quoting *Dragoo*, 96 S.W.3d at 314).

Further, "[f]iling for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283 (citing *Zamorano*, 84 S.W.3d at 651 n.40). "Repeated requests for a speedy trial

weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, [s]he wants only a dismissal." *Id.* (citing *Barker*, 407 U.S. at 534–36).

Gannon was arrested on September 5, 2019, and waited over twenty-two months before asserting a violation of her right to a speedy trial. Rather than filing a request for a speedy trial, Gannon moved for dismissal. Gannon does not assert, and the record does not show, that she ever asserted her right to a speedy trial, requested a trial setting, or brought her motion to the attention of the trial court until the motion was heard eighteen months after it was filed. This shows that Gannon only desired a dismissal, not a trial. *See id.*

Because Gannon (1) failed to assert her right to a speedy trial for twenty-two months, (2) failed to request a trial setting, (3) sought a dismissal rather than a speedy trial, and (4) failed to seek a hearing on her motion for eighteen months, this factor weighs strongly against finding a speedy-trial violation. *See Balderas*, 517 S.W.3d at 771; *Velasco*, 678 S.W.3d at 268.

### D. Prejudice to Gannon

"The fourth *Barker* factor focuses on prejudice to the defendant because of the length of delay." *Balderas*, 517 S.W.3d at 772. Prejudice is analyzed by "consider[ing] three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id.* (citing *Gonzales v. State*, 435 S.W.3d 801, 812 (Tex. Crim. App. 2014)). "Of these types of prejudice, the last is the most serious 'because the inability of a defendant adequately to prepare h[er] case skews the fairness of the entire system.'"

8

*Cantu*, 253 S.W.3d at 285 (quoting *Dragoo*, 96 S.W.3d at 316)). Although she is not required to show actual prejudice, the "defendant has the burden to make some showing of prejudice." *Balderas*, 517 S.W.3d at 772 (citing *Munoz*, 991 S.W.2d at 826).

Gannon concedes that there was no evidence of the first[6] and third types of prejudice. At the hearing on her motion to dismiss, Gannon and her mother testified. Gannon testified that she was diagnosed with "bipolar, PTSD, anxiety, [and] depression" prior to her arrest. She testified that her depression and anxiety had gotten worse, and that her visits to mental-health therapists had increased, during the pendency of the case because of the prospect of spending the next ten or twenty years in prison, which had impeded her ability to progress and flourish. She also testified that her symptoms worsened around the times she had to appear in court, which she said occurred close to twenty times either in person or by audio/video conference.

Gannon also testified that she applied for employment with many companies, but based on feedback, she had been turned down because of her pending cases. She specifically identified five companies where she had applied but conceded that for all but one she was turned down because of both the charge in this case and charges she faced in Bexar County.[7] After the Bexar County cases were resolved, Gannon obtained full-time employment in December 2022. Although she testified that she took time off work to attend hearings, she made up her missed time on other days. Gannon also acknowledged that her mother paid the property taxes on the

---

[6]The record shows that Gannon only spent part of one day in jail.

[7]Gannon testified that she was arrested in Bexar County in April 2019 and placed on deferred adjudication for that offense in October 2022.

9

house she occupied[8] and that she helped Gannon with bills and anything else that she needed. Gannon's mother confirmed most of Gannon's testimony.

Although Gannon testified generally that her anxiety and depression worsened during the pendency of this case, she was facing charges in Bexar County for almost the entire time this case was pending, which the trial court could have believed also contributed to her anxiety and depression. Further, the anxiety she specifically identified was not beyond the normal anxiety associated with a person being charged with a first-degree-felony drug offense. As a result, although it is relevant, it "is not sufficient proof of prejudice under the *Barker* test." *Cantu*, 253 S.W.3d at 286 (citing *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003)).

Gannon also testified that she had been turned down for employment by at least five companies as a result of the charges she faced in this case and in Bexar County. Although she lived in a house owned by her mother and her mother helped support her financially, her inability to obtain employment is evidence that she suffered a financial hardship during the delay. However, the degree that this case caused that hardship was lessened somewhat because, for almost all of the pendency of this case, she also faced criminal charges in Bexar County. *See Balderas*, 517 S.W.3d at 773 ("Balderas's argument regarding the disruption of his life plans is undercut by the fact that he was being held on other serious charges."). In addition, Gannon acquiesced in the delay by not timely asserting her right to a speedy trial and by waiting for eighteen months to have her motion to dismiss heard. As a result, any prejudice she suffered was "extenuated by [Gannon's] longtime acquiescence in the delay." *Dragoo*, 96 S.W.3d at 315.

---

[8]Gannon's mother testified that she owned the house occupied by Gannon.

Although Gannon concedes there is no evidence that the delay impaired her defense, the almost three-and-one-half-year delay between her arrest and her trial is presumptively prejudicial to her defense. *See id.* (citing *Zamorano*, 84 S.W.3d at 654). Nevertheless, Gannon's longtime acquiescence in the delay also extenuated the presumption of prejudice. *See id.*

Because Gannon did not show prejudice, this factor weighs against finding a speedy-trial violation.

### E.    Balancing the Factors

Weighing in favor of finding a speedy-trial violation was the excessive delay attributable to the State. Weighing heavily against finding a violation was Gannon first asserting her right to a speedy trial twenty-two months after her arrest and her failure to request a trial setting or a hearing on her motion for an additional eighteen months. Also weighing against finding a violation was that Gannon sought a dismissal of the charges, rather than a trial setting, which indicated that she did not want to go to trial. In addition, any prejudice she suffered from the delay was lessened by her other pending charges and extenuated by her acquiescence in the delay.[9] This also weighed against finding a violation.

---

[9]In her brief, Gannon cites a number of cases in which a speedy-trial violation was found. However, those cases are distinguishable from this case. In all but one of those cases, the court of appeals found that all the *Barker* factors weighed in favor of finding a violation. *See Gonzales v. State*, 435 S.W.3d 801, 809–15 (Tex. Crim. App. 2014); *Zamorano*, 84 S.W.3d at 654–55; *Fields v. State*, No. 09-21-00046-CR, 2022 WL 2231194, at *3–4 (Tex. App.—Beaumont June 22, 2022, no pet.) (mem. op., not designated for publication); *Bosworth v. State*, 422 S.W.3d 759, 774 (Tex. App.—Texarkana 2013, pet. ref'd); *Stock v. State*, 214 S.W.3d 761, 767 (Tex. App.—Austin 2007, no pet.); *State v. Rangel*, 980 S.W.2d 840, 845 (Tex. App.—San Antonio 1998, no pet.); *State v. Burckhardt*, 952 S.W.2d 100, 102–04 (Tex. App.—San Antonio 1997, no pet.). In the other case cited by Gannon, the delay was over seven years from the indictment to the hearing on the defendant's speedy-trial motion. *See State v. Moreno*, 651 S.W.3d 399, 412 (Tex. App.—Houston [1st Dist.] 2022, no pet.). The delay was mostly caused by the State's negligence, prompting the court of appeals to observe that "'the weight [courts] assign to official negligence compounds over time as the presumption of evidentiary prejudice grows,' and [therefore] 'toleration of such negligence varies inversely with its protractedness.'" *Id.* (first alteration in original) (quoting *Doggett v. United*

We find that the four factors, balanced together, weigh against finding a violation of Gannon's right to a speedy trial. We overrule her first issue.[10]

## IV. Disposition

For the reasons stated, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: January 31, 2024
Date Decided: March 1, 2024

Do Not Publish

---

*States*, 505 U.S. 647, 657 (1992)). In that case, the first, second, and fourth factors weighed in favor of finding a violation. *Id.* at 418. Even though the defendant's assertion of his right to a speedy trial was untimely, the court of appeals concluded, "(1) Moreno's burden to assert the right to a speedy trial and show prejudice was lessened by the weight of the first two factors against the State, and (2) the balance of the *Barker* factors supports a conclusion that Moreno was denied his constitutional right to a speedy trial." *Id.* at 419.

[10]In her second issue, Gannon requested that we abate this appeal and direct the trial court to enter findings of fact and conclusions of law, if the record were insufficient to address the merits of her first issue. Because the appellate record was sufficient to address the merits of Gannon's first issue, we need not address this issue.