Opinion issued December 19, 2017



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00716-CR

———————————

**CRAIG PORTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Case No. 1514084

## O P I N I O N

A jury found appellant Craig Porter guilty of the felony offense of manslaughter, and the trial court assessed Porter's punishment at confinement for life. In his sole issue on appeal, Porter contends that the trial court erred by denying

his motion to dismiss for violation of his right to a speedy trial. Because the trial court did not err in denying Porter's motion to dismiss, we affirm.

## Background

In 2002, Cherita Thurman was found dead—naked, with her legs and arms bound. The medical examiner determined that she had been asphyxiated. Investigators were unable to identify the perpetrator.

In 2013, a Combined DNA Index System (CODIS) search connected Porter to Thurman. Testing revealed Porter's DNA in multiple places on Thurman's body. The State arrested Porter in January 2013 and he received appointed counsel. In March 2013, Porter was indicted for Thurman's murder.

Trial began on August 8, 2016, and the jury found Porter guilty of manslaughter. The trial court assessed punishment at confinement for life. Porter appealed, arguing that his case should have been dismissed for violation of his right to a speedy trial.

Because the primary concern in this appeal is the length between Porter's arrest and trial, we detail the pretrial events. These events demonstrate that Porter was himself responsible for—or at least acquiesced to—most of the delay in this case.

At Porter's request, the district court reset this case six times between March 2013 and October 2013. On October 15, 2013, Porter's appointed counsel moved to

withdraw because his relationship with Porter had deteriorated to the point that Porter refused to speak with him and had filed a grievance against him with the State Bar. The trial court granted Porter's motion and, on October 23, 2013, appointed Porter new counsel. The court then reset the case two more times—again at Porter's request.

In January 2014, the trial court appointed a third lawyer, Jerome Godinich, to represent Porter. At Porter's request, the court then reset the case six more times between January and August 2014. In August 2014, Porter waived his right to appointed counsel and began to represent himself, with Godinich as standby counsel. Once again at Porter's request, the court reset the case twice between August 2014 and March 2015. In March 2015, Porter ceased representing himself and Godinich began representing him again. Porter then requested two more resets. In addition to these two resets requested by Porter, the court reset the case a third time, but the record does not reflect the reason for this reset or who requested it.

On September 10, 2015, the court reset the trial for January 22, 2016. The record does not reflect the reason for this reset or who requested it. In January 2016, the court reset the trial for March 14, 2016. The reset order indicates "Lab" as the reason for the reset. On February 18, 2016, Porter filed a motion for independent analysis of DNA evidence, which the court granted on March 1, 2016. In March, the court reset the trial for June 20, 2016.

Three days before the June trial date, the State reindicted the case. Because Porter elected not to waive his ten days' statutory notice, the court reset the trial for August 8, 2016.

On December 11, 2015—eight months before trial—Porter's counsel moved to dismiss, alleging a speedy-trial violation. Porter did not set the motion for a hearing. On August 8, 2016, the trial court heard the motion and denied it.

In the midst of all of this, Porter filed three pro se motions based on his speedy-trial right. But at all relevant times, Porter was represented by counsel and had not been permitted hybrid representation. The trial court did not rule on these motions.

## Discussion

The sole issue before us is whether the trial court erred by denying Porter's motion to dismiss for violation of his right to a speedy trial. It did not.

## A.     Standard of Review and Applicable Law

In reviewing a trial court's denial of a motion to dismiss that asserts a speedy-trial right violation, we review factual issues for abuse of discretion and legal issues de novo. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). Because the trial court denied Porter's motion to dismiss, we presume that the trial court resolved any disputed issues of fact in the State's favor, and we defer to the implied findings of fact that the record supports. *See id.* We review the trial court's decision

in light of the arguments, information, and evidence before the court when it ruled. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

Both the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution guarantee a defendant's right to a speedy trial. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Klopfer v. North Carolina*, 386 U.S. 213, 222–24, 87 S. Ct. 988, 993–94 (1967) (Sixth Amendment speedy-trial guarantee is applied to states through Fourteenth Amendment). The sole remedy for deprivation of that right is dismissal. *See Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188 (1972); *Dragoo*, 96 S.W.3d at 313.

To determine whether a defendant was deprived of his right to a speedy trial, we balance the four factors that the United States Supreme Court set forth in *Barker v. Wingo*: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy-trial right, and (4) the prejudice to the defendant from the delay.[1] 407 U.S. at 530–33, 92 S. Ct. at 2192–93; *see also Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The State generally has the burden of justifying the length of the delay, while the defendant has the burden of proving assertion of

---

[1] Although an accused's right to a speedy trial under the Texas Constitution exists independently of the federal guarantee, the Texas Court of Criminal Appeals has traditionally analyzed claims of a denial of the State speedy-trial right under the factors established in *Barker*. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

the right and of showing prejudice. *Cantu*, 253 S.W.3d at 280. The "greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

**B.     Analysis**

An analysis of the *Barker* factors demonstrates that the trial court did not err in denying Porter's motion to dismiss.

Factor 1. The parties do not dispute that the delay between Porter's indictment and trial—41 months—was sufficiently lengthy to trigger the *Barker* inquiry. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo*, 96 S.W.3d at 314. Because the delay stretched beyond the minimum needed to prompt judicial examination, this factor weighs in Porter's favor. *See Dragoo*, 96 S.W.3d at 314. We turn to the other *Barker* factors.

Factor 2. The second *Barker* factor—the reason for the delay—counsels strongly against a speedy-trial violation. Critical here, "delay caused by the defense weighs against the defendant"; delay may be a "defense tactic." *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S. Ct. 1283, 1290 (2009); *Munoz*, 991 S.W.2d at 822 (delay attributable "in whole or in part to the defendant" may constitute waiver of speedy-trial claim); *see also Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[A]greed resets are inconsistent with assertion of a

speedy trial right, and the delay covered by such resets should not be included in speedy trial computations.") (internal quotation omitted).

In this case, the evidence before the trial court shows that the vast majority of the delay was attributable to or agreed to by Porter. Specifically, much of the delay was caused by (1) resets requested by Porter or (2) Porter's conflicts with his trial counsel, which resulted in three different appointments of counsel. Further, at the motion to dismiss hearing, the State explained that the defense requested or acquiesced to several resets to permit the State to conduct additional DNA testing, because Porter would have benefitted from the State finding another person's DNA on Thurman's body.

Because the delay was predominantly attributable to Porter or agreed to by Porter, the second *Barker* factor weighs strongly against dismissal. *See Brillon*, 556 U.S. at 90, 129 S. Ct. at 1290; *see also Munoz*, 991 S.W.2d at 822–25 ("We also note appellee was in large part responsible for the delay which is probably dispositive of [his] speedy trial claim.").

Factor 3. The third *Barker* factor—Porter's diligence in asserting his speedy-trial right—does not sway the balance toward Porter.

In December 2015—33 months after Porter was indicted—Porter's counsel filed Porter's sole valid motion asserting his speedy-trial right. There is no evidence that Porter attempted to have this motion heard until the August 2016 trial date. The

7

defendant bears some responsibility to assert his right, and a defendant's failure to assert his right can be an indication that he did not actually want a speedy trial. *See Hopper v. State*, 520 S.W.3d 915, 928 (Tex. Crim. App. 2017).

Also telling is the fact that Porter's motion did not actually seek a speedy trial; instead, it sought dismissal. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. In fact, the failure to request a speedy trial before seeking dismissal "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.* Here, Porter's sole valid motion requested dismissal, and Porter did not seek to have this motion heard before the trial date. These points diminish Porter's speedy-trial argument.

Finally, Porter's three pro-se motions—all filed while he had counsel, when he was not granted hybrid representation, and on which the trial court did not rule— do not change our determination. It is well settled that a pro se speedy-trial motion, filed while the defendant has counsel and on which the trial court does not rule, is not subject to appeal. *See, e.g.*, *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("[A] defendant has no right to hybrid representation," a "trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel[,]" and a "trial court's decision not to rule on a pro se motion in this situation would not be subject to review."); *see also Crocker v. State*, 441 S.W.3d 306, 312

(Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

The record reflects that Porter had not been permitted hybrid representation. *See Ex parte Porter*, No. 14-16-00237-CR, 2016 WL 1448488, at *1 (Tex. App.— Houston [14th Dist.] April 12, 2016, orig. proceeding) (mem. op., not designated for publication) (denying Porter's request to compel trial court to rule on pro se motion and explaining that Porter was not entitled to hybrid representation); *In re Porter*, No. 14-15-00014-CR, 2015 WL 224778, at *1 (Tex. App.—Houston [14th Dist.] Jan. 15, 2015, orig. proceeding) (mem. op., not designated for publication) (similar). The record also shows that the trial court did not rule on Porter's pro se motions. *See Porter*, 2015 WL 224778, at *1. Porter's counsel could have filed valid speedy trial motions and had them heard. Porter could have filed a motion while he represented himself pro se and brought it to the court's attention. But he did not, and his pro se motions, which were never ruled on by the trial court, are not subject to appellate consideration. *See Robinson,* 240 S.W.3d at 922; *Guevara*, 985 S.W.2d at 592. In any event, Porter did not set a hearing on any of these motions, two of the three sought dismissal, and they do not outweigh the fact that Porter was responsible for or agreed to most of the delay in the case.

Factor 4. The final *Barker* factor, which analyzes the prejudice to Porter resulting from the delay, also weighs against a speedy-trial violation. We assess

prejudice in light of the interests the speedy-trial right protects: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the defendant, and (3) limiting the possibility the defense will be impaired. *Cantu*, 253 S.W.3d at 285; *Munoz*, 991 S.W.2d at 826. The last of these is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *see also Cantu*, 253 S.W.3d at 285; *Munoz*, 991 S.W.2d at 826.

As an initial matter, Porter cannot rely on presumptive prejudice because any such prejudice was extenuated by Porter's role or acquiescence in the delay. *See, e.g., Dragoo*, 96 S.W.3d at 315 (presumptive prejudice is "extenuated . . . by the defendant's acquiescence" in the delay) (quotation omitted); *Hopper*, 520 S.W.3d at 929 ("Any presumptive prejudice due to the passage of time was extenuated by appellant's acquiescence in the delay.").

Porter fails to meet his burden as to prejudice. *See Hopper*, 520 S.W.3d at 929 ("[W]e agree that appellant has not shown any particularized prejudice."). First, Porter fails to show that any delay here impaired his defense—a crucial consideration under this factor. Porter generally asserts that he forgot witnesses' names and locations, and the witnesses were therefore unavailable. But he does not point to evidence identifying any specific witness who became unavailable due to the delay, much less how that witness would have supported his defense. At the

10

motion to dismiss hearing, the State asked Porter if there were any witnesses he was unable to subpoena because of the delay. Porter responded that he used to have an associate named Sam who could testify to where he was staying at the time, but Porter did not know his full name and had not been in contact with Sam since he was arrested. Porter also testified that there were other witnesses he wanted to call but he "forgot their names."

The law requires more. A defendant must show that "lapses of memory" are in some way "significant to the outcome" of the case. *Munoz*, 991 S.W.2d at 829. Porter did not identify any specific problems due to faded memories or to the delay, and he has not shown how any lapses of memory are in some way significant to the outcome of his case. *See Barker*, 407 U.S. at 534; 92 S. Ct. at 2194; *Munoz*, 991 S.W.2d at 829; *see also McGregor v. State*, 394 S.W.3d 90, 116 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd) (defendant's claim that he had forgotten witnesses did not demonstrate prejudice where he did not identify specific problems due to faded memories: "Defense counsel did not . . . identify specific problems due to faded memories or specific witnesses, other than Officer Cates, who were unavailable due to the delay. Nor does he indicate how he was prejudiced by the faded memories of any witness.").

Importantly, this was a cold case where the crime was committed more than a decade before Porter's arrest. "Memory loss was therefore a potential problem

regardless of how quickly the State indicted and brought appellant to trial after his arrest," and Porter did not show that the delay from arrest to trial played any additional role that was significant to the outcome of the case. *McGregor*, 394 S.W.3d at 116; *see Barker*, 407 U.S. at 534; 92 S. Ct. at 2194.

Finally, although Porter asserted at the motion to dismiss hearing that he was incarcerated before trial, which promoted "idleness," we cannot conclude on this record that the delay—which Porter predominately caused or acquiesced to—prejudiced him such that this factor would support dismissal of his case. *See Cantu*, 253 S.W.3d at 286 (evidence of defendant's generalized anxiety, although relevant, "is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation"); *McGregor*, 394 S.W.3d at 116 (prejudice factor weighed against dismissal where appellant did not demonstrate prejudice due to faded memories and appellant "presented no evidence that he suffered from any anxiety greater than that normally experienced by defendants facing criminal prosecution"); *see also Munoz*, 991 S.W.2d at 829 ("In this case, appellee's showing of prejudice was 'minimal.'"). This is especially true where Porter received full credit for his time spent in jail. *See Starks v. State*, 266 S.W.3d 605, 612–13 (Tex. App.—El Paso 2008, no pet.) (Appellant "received full credit for the time he had

spent in jail, so his twenty-five-month pretrial incarceration was not, in this case, oppressive.").

We accordingly conclude that this fourth factor does not weigh in favor of dismissal.

\*                                    \*                                    \*

A balancing of the *Barker* factors demonstrates that the trial court did not err in denying Porter's motion to dismiss. We balance the *Barker* factors with "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. Because the trial court did not err in denying Porter's motion to dismiss, we overrule his sole issue.

## Conclusion

We affirm the trial court's judgment and dismiss all pending motions.


Jennifer Caughey
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Caughey.

Publish. TEX. R. APP. P. 47.2(b).