**Opinion issued May 2, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00003-CR**

————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**JUSTIN TYLER BECK, Appellee**

---

**On Appeal from the County Court at Law**
**Austin County, Texas**
**Trial Court Case No. 22CR-36804**

---

# O P I N I O N

The State charged Justin Tyler Beck with the misdemeanor offense of driving while intoxicated. Beck successfully moved to dismiss the prosecution on the basis that the State violated his constitutional right to a speedy trial. The State appeals.

We reverse and remand.

# BACKGROUND

Beck was arrested for the offense of driving while intoxicated on August 10, 2020. He bonded out of jail the next day, and he has since remained out on bond.

Almost 14 months elapsed before the State charged Beck for the offense. On January 5, 2022, the State filed an information alleging that Beck had operated a motor vehicle in a public place while intoxicated by alcohol, drugs, or both.

During the intervening 14 months or so, there were multiple court settings. Beck appeared in court on November 12, 2020, May 6, 2021, July 21, 2021, November 4, 2021, January 6, 2022, March 17, 2022, June 15, 2022, July 20, 2022, September 15, 2022, and November 2, 2022. Each of these settings is documented by a notice of setting. Each notice is signed by Beck or by his defense counsel.

Beck was not represented by counsel until the June 15, 2022 setting. The prior two notices of setting, which are dated January 6 and March 17, indicate that the case was continued so that Beck could hire a lawyer to represent him.

Beck's counsel moved for a speedy trial on June 14, 2022. He requested that the trial court "set this case for an immediate trial without further delay." In the motion, Beck asserted that due to the elapse of approximately 22 months he no longer had "an independent memory of the facts leading up to his arrest and prosecution" and therefore was "no longer able to effectively aid counsel in his own defense." He further stated that the repeated court appearances and delay in drug-

testing his blood sample caused him "great anxiety and concern." The motion was verified by Beck's counsel, who averred that the facts were true and correct.

Beck did not set his speedy-trial motion for hearing by the trial court.

At the July 20, 2022 setting, the State announced ready for trial. Beck announced not ready for trial because his defense counsel had a scheduling conflict, specifically, a trial setting in a felony prosecution in another trial court.

On September 7, Beck's counsel moved to dismiss the case on the ground that his client's right to a speedy trial had been violated. In the motion, Beck asserted that no trial date was set despite his prior speedy-trial motion. He asserted the same prejudice due to memory loss and anxiety recited in the first motion. Once again, Beck's counsel verified the motion, averring the facts were true and correct.

Beck did not set his motion to dismiss for hearing by the trial court.

At the September 15, 2022 setting, the State announced ready for trial. Beck announced not ready because his defense counsel again had a scheduling conflict, specifically, a trial setting in another felony prosecution in another trial court.

At the next setting, on November 2, 2022, the State announced ready for trial. Beck objected to going forward without an immediate hearing on his motion to dismiss. The trial court then immediately held a hearing on the motion.

Beck did not testify at the hearing, which was non-evidentiary in nature. Defense counsel and the prosecutor each presented argument regarding the delay.

At the hearing, it was agreed that the State received a blood-alcohol analysis from the laboratory on September 17, 2020. It showed Beck had a blood-alcohol concentration of 0.017, which is below the 0.080 legal limit for intoxication. But the Department of Public Safety's laboratory had not yet analyzed his blood for drugs.

On March 24, 2022, DPS issued its drug analysis. But DPS failed to forward its analysis to the district attorney's office. Consequently, the prosecution did not learn of the report until June 15, 2022, when the district attorney inquired of DPS.

The drug-test results indicated that Beck's blood contained THC or THC metabolites. But the record does not reflect the significance of these test results. The district attorney attributed the delay of the test results to "a significant backlog." The district attorney acknowledged that trial was delayed in part due to delay in receipt of the drug-test results but suggested that he had no way to make DPS be timelier.

At the conclusion of the hearing, the trial court indicated that it would "go ahead and grant the motion." By way of explanation, the trial court stated, "I know that it's been an ongoing struggling with the DPS to get these results here and we've asked and we've tried to get DPS to speed things up. So, maybe the message from this case would help speed things up." Several days later, on November 8, 2022, the trial court signed an order granting the motion to dismiss and dismissed the case.

Two weeks later, the State filed a motion for reconsideration. The State argued that the trial court should not have dismissed the case for two alternative reasons.

4

First, the State argued that Beck's speedy-trial challenge was not cognizable because he had agreed to the delay by agreeing to reset the case at each and every setting. Second, the State argued that even if Beck's speedy-trial challenge was cognizable in spite of the multiple agreed resets, the circumstances as a whole did not support a finding that the State had infringed the constitutional guarantee of a speedy trial.

The assistant criminal district attorney who was the State's trial counsel submitted an affidavit in conjunction with the motion for reconsideration. In his affidavit, he averred that the trial court reset the case seven times before Beck filed his speedy-trial motion and that each reset was with the agreement of the parties. He further averred that the primary causes of delay "were to await pending blood analysis results from DPS and to give [Beck] the opportunity to hire an attorney."

On January 2, 2023, the trial court signed findings of fact and conclusions of law confirming its earlier order dismissing the case. The trial court concluded that:

- the delay of 22 months between Beck's arrest and his speedy-trial motion was unreasonable and weighed against the State's position;

- the delay was due to the lab's failure to timely test the evidence and thus was attributable solely to the State's negligence or misconduct;

- Beck was not required to assert his constitutional right to a speedy trial at any point prior to when he filed his motion for speedy trial; and

- the delay created a presumption of prejudice, caused Beck undue anxiety, and caused him to suffer memory loss that would damage his defense.

When the preceding factors were considered together, the trial court reasoned, they showed a violation of the speedy-trial guarantee and supported dismissal of the case.

5

The State appeals.

## DISCUSSION

### Speedy-Trial Challenges

The United States Constitution and Texas Constitution both guarantee an accused the right to a speedy trial. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see also State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021) (describing Texas Constitution as containing "the same guarantee" as U.S. Constitution); *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003) (indicating that courts apply same legal standard to state and federal constitutional speedy-trial challenges).

Courts evaluate a speedy-trial claim under a four-factor test that considers the length of the delay, the reasons for the delay, the extent to which the accused asserted the right to a speedy trial, and any prejudice suffered by the accused due to the delay. *Lopez*, 631 S.W.3d at 113. The first of these four factors—the length of the delay— also essentially functions as a threshold mechanism, in that courts will not entertain a speedy-trial motion unless the length of delay is sufficiently unreasonable. *Id.*; *see also Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (explaining that court does not examine other factors unless accused first makes threshold showing that length of delay is unreasonable enough to warrant further inquiry).

The first step in a speedy-trial analysis, therefore, is to calculate the length of the delay. *Gonzales*, 435 S.W.3d at 809. The length of delay is measured from the

time an accused is arrested or indicted until he demands a speedy trial or is tried. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). In general, a delay of eight months to a year or more is sufficient to cross the threshold requiring a court to conduct a complete speedy-trial analysis. *Lopez*, 631 S.W.3d at 114. But a given delay must be evaluated on its own facts, taking into account circumstances like the seriousness of the crime, complexity of the case, and whether the accused can make bail or will remain confined in jail while awaiting trial. *Id.* The accused bears the burden of showing that the length of delay is unreasonable enough to require a complete speedy-trial analysis. *Gonzales*, 435 S.W.3d at 808.

Assuming that the length of delay is sufficiently unreasonable to require a complete speedy-trial analysis, a court must assess the strength of each of the four factors and balance their relative weights in light of both sides' conduct. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). No single factor is necessary or sufficient on its own to support a finding that the accused's right to a speedy trial has been violated. *Id.* The four factors must be considered together. *Id.* In addition, the four factors are not exclusive. *Johnson v. State*, 954 S.W.2d 770, 772–73 (Tex. Crim. App. 1997). A court should likewise consider any other relevant circumstances in conjunction with the four factors. *Cantu*, 253 S.W.3d at 281.

The length of delay is not just a threshold issue but also a relevant factor when the threshold necessitating further inquiry is crossed. *See Hopper v. State*, 520

S.W.3d 915, 924 (Tex. Crim. App. 2017) (characterizing length of delay as "a double inquiry," with court first assessing whether delay is lengthy enough to trigger further analysis and, if so, then assessing extent to which delay stretches beyond length required to trigger further analysis). The longer the delay stretches beyond the threshold triggering a complete speedy-trial analysis, the more the delay weighs in favor of finding a speedy-trial violation. *Gonzales*, 435 S.W.3d at 809. For example, the Court of Criminal Appeals has held that a delay of several years beyond the threshold, in and of itself, weighs heavily in favor of finding a speedy-trial violation. *E.g.*, *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (holding three-and-a-half-year delay between arrest and trial "stretched far beyond the minimum needed to trigger" complete inquiry and thus weighed heavily in favor of finding violation). Lengthier delay weighs in favor of finding a violation because prejudice associated with delay usually increases over time. *Zamorano*, 84 S.W.3d at 649.

With respect to the second factor, reasons for the delay, the State bears the burden of justifying the delay. *Cantu*, 253 S.W.3d at 280. The weight courts assign to delay differs depending on its cause. *Hopper*, 520 S.W.3d at 924. Deliberate delay by the State to hamper the defense weighs heavily against the government. *Id.* More neutral reasons, like negligence or overcrowded dockets, still weigh against the government but less heavily so. *Id.* Justifiable delay does not count against the government. *See Gonzales*, 435 S.W.3d at 810 (observing that delay counts toward

8

length of delay requiring explanation only when delay is unjustifiable in nature while delay is discounted when delay is justified). For example, delay due to good-faith plea negotiations or good-faith dismissal of a criminal charge followed by filing of a new criminal charge is justified. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999) (plea negotiations); *Deeb v. State*, 815 S.W.2d 692, 705 (Tex. Crim. App. 1991) (dismissal and refiling of criminal charges). Delay attributable to the defense weighs against finding a speedy-trial violation. *Hopper*, 520 S.W.3d at 924; *see also Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (stating that delay caused by defendant or defense counsel weighs against finding of speedy-trial violation). When the State simply fails to explain the delay, a court may presume neither that the delay is justified nor unjustified. *Balderas*, 517 S.W.3d at 768.

As to the third factor, the extent to which the accused asserted the right to a speedy trial, the accused bears the burden of proving he asserted the right. *Cantu*, 253 S.W.3d at 280. While the accused does not have a duty to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. *Zamorano*, 84 S.W.3d at 651; *see also Henson v. State*, 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013) (holding speedy-trial right is subject to ordinary error-preservation rules). When the accused fails to timely assert his right to a speedy trial, his failure to do so strongly indicates that he did not desire one. *Balderas*, 517 S.W.3d at 771. The longer trial is delayed, the more likely an accused who desires a speedy trial would

9

be to assert his right to one. *Id.* Hence, prolonged inaction by the accused weighs more heavily against finding that the speedy-trial guarantee has been violated. *Id.*

With respect to the fourth factor, prejudice, the accused generally bears the burden to show the delay harmed him in some manner. *Cantu*, 253 S.W.3d at 280. But affirmative proof of particularized prejudice is not always required. *Hopper*, 520 S.W.3d at 924. Excessive delay may compromise the reliability of a trial in ways the parties cannot identify let alone prove. *Id.* When the delay is this excessive, the accused is excused from the requirement to show that the delay prejudiced him. *Gonzales*, 435 S.W.3d at 812. In these instances, prejudice is presumptive, and the State must either vitiate the presumption by proving the accused acquiesced in the delay or by persuasively rebutting the presumption of prejudice. *Id.* at 814–15.

Courts must evaluate prejudice in view of the interests the speedy-trial guarantee safeguards. *Hopper*, 520 S.W.3d at 924. The speedy-trial guarantee is intended to prevent oppressive pretrial incarceration, minimize the anxiety and concern of the accused, and limit the possibility the defense will be impaired. *Id.* The last of these three interests is the most important one because the truth-seeking function of a trial is compromised when the accused is unable to adequately prepare a defense due to delay that is beyond his control. *Gonzales*, 435 S.W.3d at 812.

Courts must also be mindful that the speedy-trial guarantee differs from other constitutional rights, inasmuch as the infringement of the right can also benefit the

10

accused. *Henson*, 407 S.W.3d at 766. Delay can adversely impact memories of witnesses or cause witnesses to become unavailable altogether. *Id.* at 766–77. But these consequences may impact the State as well, making it more difficult for the prosecution to carry its burden of proof at trial. *Id.* Thus, if the accused quietly acquiesces in the delay, any prejudice is extenuated. *Hopper*, 520 S.W.3d at 929.

When, on balance, the four factors show a violation of the speedy-trial guarantee, dismissal with prejudice is the lone remedy. *Shaw*, 117 S.W.3d at 888; *Dragoo*, 96 S.W.3d at 313. Because dismissal of the charges is an extreme measure, courts must apply this balancing test with common sense and sensitivity so that they dismiss solely when the evidence shows that an accused's actual and asserted interest in a speedy trial has been violated. *Cantu*, 253 S.W.3d at 281. The constitutional guarantee safeguards the right to a speedy trial, not dismissal of the charges. *Id.*

### Standard of Review

A trial court's ruling on a motion to dismiss based on the speedy-trial guarantee is subject the same standard of review as a ruling on a motion to suppress. *Gonzales*, 435 S.W.3d at 808. We defer to the trial court's findings of fact, provided they are supported by the record. *Id.*; *see also State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) (advising that appellate court must presume trial court resolved disputed fact issues in favor of its findings and defer to these findings so long as record supports them). We likewise defer to the inferences the trial court

11

draws from the facts, as long as these inferences are not conjectural or speculative. *Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim. App. 2005). However, whether the length of delay is unreasonable enough to warrant a complete speedy-trial analysis and whether on balance the four factors and any other relevant considerations ultimately demonstrate a speedy-trial violation are questions of law, which we review de novo. *Gonzales*, 435 S.W.3d at 809; *see also Cantu*, 253 S.W.3d at 282 (noting that evaluation of individual factors entails factual determinations and legal conclusions but that balancing of four factors poses purely legal question). Finally, our review of the trial court's ruling is confined to the evidence that was before the trial court when it made its ruling. *Gonzales*, 435 S.W.3d at 809.

## Analysis

### I.  Speedy-Trial Threshold Inquiry

The State argues that the trial court erred in conducting a complete speedy-trial analysis because the length of delay did not cross the required threshold for unreasonableness. The State reasons that the entire period of delay between Beck's arrest and his assertion of the right to a speedy trial is attributable to agreed resets and therefore cannot be counted when calculating the applicable length of delay.

The essence of the State's position is that the trial court was required to discount any delay attributable in whole or in part to the accused when it calculated whether the length of delay was sufficiently unreasonable to warrant a complete

12

speedy-trial analysis. In support of this position, the State relies in part on *Porter v. State*, 540 S.W.3d 178 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Our decision in *Porter* does not support the State's position. In *Porter*, we stated that delay caused by the defense weighs against an accused, and we discounted delay that was "attributable to or agreed to by" the accused in that case. 540 S.W.3d at 182. In particular, we discounted delay the accused caused by requesting resets and by quarreling with his own counsel, which resulted in the appointment of three different lawyers. *Id.* But we discounted this delay in our evaluation of the second factor of the speedy-trial analysis, the reasons for delay, after already concluding the length of delay crossed the threshold requiring a complete speedy-trial analysis. *Id.* As a result, we concluded that the second factor weighed strongly against dismissal because the delay was largely attributable to or agreed to by the accused. *Id.*

Our mode of analysis in *Porter* is consistent with the legal standard articulated by the Court of Criminal Appeals. The Court has repeatedly stated that delay caused by the defense weighs against finding a speedy-trial violation, but it has done so in the context of discussing the second factor of a complete speedy-trial analysis. *E.g.*, *Balderas*, 517 S.W.3d at 768. The State does not cite, and we have not found, a decision from the Court in which it incorporated the reasons for delay into the threshold calculation of the length of delay. Nor would doing so be without consequence. The accused has the burden to show the length of delay is unreasonable

13

enough to require a complete speedy-trial analysis, while the State bears the burden to explain the delay when a complete speedy-trial analysis is required. *See Gonzales*, 435 S.W.3d at 808 (stating defense must make threshold showing before court is required to consider and weigh all factors); *Cantu*, 253 S.W.3d at 280 (specifying State has burden to justify length of delay). So, if we incorporated the reasons for delay into the threshold calculation, we would be shifting the burden to the accused to disprove he contributed to the length of delay at the outset. Perhaps, doing so would be reasonable. But this would not be consistent with the assignment of burdens set forth by the Court. Notably, when the Court has considered resets in its speedy-trial analysis, it has not done so as part of the threshold calculation of the length of delay. *See Balderas*, 517 S.W.3d at 768–71 (discussing agreed and unagreed resets in evaluation of second factor concerning reasons for delay); *Zamorano*, 84 S.W.3d at 651–52 (noting lack of clarity as to whether accused had objected to resets in evaluating third factor concerning assertion of right to speedy trial); *Emery v. State*, 881 S.W.2d 702, 708–09 & n.12 (Tex. Crim. App. 1994) (stating that some delay was attributable to resets resulting from requests for continuance made by accused in evaluating second factor concerning reasons for delay); *Grayless v. State*, 567 S.W.2d 216, 221 (Tex. Crim. App. [Panel Op.] 1978) (considering agreed resets in evaluating third factor concerning assertion of right to speedy trial); *Black v. State*, 505 S.W.2d 821, 824 (Tex. Crim. App. 1974) (factoring

14

in agreed resets in evaluation of second factor concerning reasons for delay); *McKinney v. State*, 505 S.W.2d 536, 542 (Tex. Crim. App. 1974) (accounting for resets agreed to and requested by accused in evaluating second factor concerning reasons for delay).

Ordinarily, the Court's evaluation of whether the length of delay is sufficiently unreasonable to require a complete speedy-trial analysis is perfunctory, consisting of no more than the most basic sort of calculation. *E.g.*, *Shaw*, 117 S.W.3d at 889 (calculating length of delay based on dates of indictment and trial and holding that 38 months triggered complete speedy-trial analysis). The Court has characterized the necessary threshold showing as a *prima facie* one. *Id.*; *see also Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996) (assuming 10-month delay "was, *prima facie*, unreasonable under the circumstances"); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (assuming 13-month delay "was, *prima facie*, unreasonable under the circumstances"). This characterization suggests the threshold inquiry is a very limited one. *See Prima Facie*, BLACK'S LAW DICTIONARY (11th ed. 2019) (describing *prima facie* showing as one "based on what seems to be true on first examination, even though it may later be proved to be untrue"); *see, e.g.*, *Smith v. State*, 530 S.W.2d 827, 830–31 (Tex. Crim. App. 1975) (holding elapse of two years and four months from arrest to trial called for further

15

consideration of speedy-trial claim but ultimately concluding there was no violation of guarantee).

To the extent the Court considers other circumstances at the threshold, these circumstances appear to be limited to matters like the seriousness of the crime, complexity of the case, and whether the accused can make bail or will remain confined in jail while awaiting trial. *Lopez*, 631 S.W.3d at 114. These matters are salient because a delay that is constitutionally intolerable as to mundane lesser offenses, like ordinary street crimes, may be constitutionally tolerable for more serious or complex crimes that require greater preparation to present to a jury. *Id.* So, for example, a delay of eight months to a year or more may not trigger a complete speedy-trial analysis in a capital murder case even though it will in a less complicated one. *See Deeb*, 815 S.W.2d at 705 (indicating that 15-month delay was not unreasonable in light of complexity of prosecution alleging conspiracy to commit capital murder but nonetheless conducting complete speedy-trial analysis). Here, the record indicates that this is a garden-variety DWI case that remains subject to the general rule that delay of eight months to a year or more calls for a complete speedy-trial analysis. *See Zamorano*, 84 S.W.3d at 649 (agreeing that delay of two years and ten months between arrest and hearing on speedy-trial motion in "plain-vanilla DWI case" was lengthy enough to trigger complete speedy-trial analysis).

In addition to our decision in *Porter*, the State also relies on several decisions rendered by our sister court, in which it held that delay attributable to agreed resets is not to be counted when calculating the length of delay for purposes of deciding whether a complete speedy-trial analysis is required. *Richardson v. State*, 631 S.W.3d 269, 275 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *Lopez v State*, 478 S.W.3d 936, 943–44 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Smith v. State*, 436 S.W.3d 353, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *State v. Kuri*, 846 S.W.2d 459, 463 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). We acknowledge that these decisions unequivocally support the State's position. However, we decline to follow this line of decisions for several reasons.

First, as explained, our own precedent is to the contrary. *Porter*, 540 S.W.3d at 182; *see also Cavitt v. State*, 507 S.W.3d 235, 245 & n.3 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding delay of 18 months required complete speedy-trial analysis and assessing impact of resets agreed to and requested by accused as part of that analysis); *Ervin v. State*, 125 S.W.3d 542, 546 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (calculating length of delay as "over eight months" from accusation to trial in spite of several resets, most of which were agreed, and concluding that this delay was sufficiently unreasonable to require complete speedy-trial analysis); *Coleman v. State*, 760 S.W.2d 356, 357–59 (Tex. App.—Houston [1st

17

Dist.] 1988, pet. ref'd) (reasoning that 16-month delay did not violate speedy-trial guarantee in part because some of this delay was justifiable as it was attributable to agreed resets but not excluding these periods of delay from calculation of length of delay itself); *cf. Ussery v. State*, 596 S.W.3d 277, 283–85 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (rejecting argument State advances here without respect to law because trial court found that most resets were not agreed to or requested by accused and record supported this finding). We are, of course, obligated to follow our own precedent when it diverges from the decisions of another court of appeals. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (instructing that three-judge panels must follow materially indistinguishable decisions of earlier panels of same court unless higher authority has superseded prior panel decision).

Second, as outlined above, our precedent is consistent with the decisions of the Court of Criminal Appeals, which has not incorporated reasons for delay, like agreed resets, into the threshold calculation of the length of delay. In contrast, our sister court's contrary rule does not seem consistent with the Court's precedent.

Third, the doctrinal foundation on which our sister court's contrary rule rests is no longer as firm as it once may have been. Our sister court's rule is to a significant degree derivative of its decision in *Caicedo v. State*, 769 S.W.2d 597 (Tex. App.—Houston [14th Dist.] 1989, no pet.). In that case, the court of appeals rejected an appellant's contention that the trial court erred in denying his speedy-trial motion,

18

holding the appellant had waived his right to a speedy trial by agreeing to reset the case. *Id.* at 598. Based largely on *Caicedo*, the court of appeals later said that it had previously held "time covered by a defendant's agreed resets is to be excluded from speedy trial consideration." *Kuri*, 846 S.W.2d at 463 (citing *Caicedo* in support).

However, *Caicedo*'s holding is no longer valid. In *Henson*, the Court of Criminal Appeals agreed that an accused may waive his right to a speedy trial, but it did so based on conventional error-preservation analysis, framing the issue as "whether a defendant must first preserve error for appellate review through a timely objection in the trial court." 407 S.W.3d at 767 & n.10 (citing Rule 33.1 of Texas Rules of Appellate Procedure, which governs error preservation). There, the Court held that the accused had in fact waived his right to a speedy-trial because he raised this issue for the first time on appeal. *See id.* at 766, 769 (stating that accused raised issue for first time in court of appeals and had made no effort to demand speedy trial in trial court). The Court did also observe that the accused had agreed to each and every reset of the case. *Id.* at 769. But the Court made this observation in rejecting the accused's contention that his announcement of ready for trial constituted a speedy-trial demand. *See id.* The Court reasoned that the accused's announcement of ready, which was ambiguous at best with respect to the speedy-trial issue, could not be construed as reflecting an implicit request for a speedy trial on his part because all his other conduct, including the agreed resets, was inconsistent with a demand

for a speedy trial. *See id. Caicedo*'s holding—that an accused who makes a speedy-trial motion in the trial court can nonetheless waive the issue by agreeing to resets—cannot be squared with *Henson*'s conventional error-preservation analysis. Under that conventional analysis, agreed resets may affect the merits of a speedy-trial motion, but they cannot waive that motion. *See* TEX. R. APP. P. 33.1(a) (generally providing that to preserve error party must make timely request, objection, or motion and obtain ruling from trial court or object to trial court's refusal to rule).

The lone other authority our sister court has cited in support of its rule excluding agreed resets from speedy-trial calculations is *Lewis v. State*, 686 S.W.2d 243 (Tex. App.—Houston [14th Dist.] 1985), *judgm't aff'd*, 711 S.W.2d 41 (Tex. Crim. App. 1986). But *Lewis* is far less apposite than it might otherwise seem. In that case, the court of appeals excluded the time attributable to an agreed reset in deciding whether the State had complied with a deadline imposed by Texas's now-repealed Speedy Trial Act. *Id.* at 244–45. But the reason the court did so, which goes unmentioned in the decision, is because the Act required exclusion of these periods from statutory speedy-trial calculations. *See Robinson v. State*, 707 S.W.2d 47, 49–50 & n.2 (Tex. Crim. App. 1986) (explaining that agreed resets were equivalent to continuances and thus not included in calculations because Act excluded time attributable to requested and agreed continuances from statutory deadlines). Thus, *Lewis* cannot be marshaled for the position that courts must exclude delay resulting

20

from agreed resets in calculating the length of delay when deciding whether a complete speedy-trial analysis is required under the federal or Texas constitutions.

In sum, we reject the State's position that delay attributable to agreed resets is not counted when calculating the length of delay to decide whether the delay is unreasonable enough to require a complete speedy-trial analysis. We do so on the basis of our precedent, which is contrary to the State's position. But even if we were considering this issue as a matter of first impression, we would still reject the State's position because it is inconsistent with the decisions of the Court of Criminal Appeals and based on intermediate appellate court decisions that are mistaken.

We overrule the State's first issue.

## II. Complete Speedy-Trial Analysis

The State argues in the alternative that the trial court erred in its evaluation of the four factors applicable to a complete speedy-trial analysis. The State maintains that the trial court miscalculated the length of delay, discounted Beck's acquiescence in any delay, misapprehended that the delay in lab testing weighed heavily against the State, and presumed the delay prejudiced Beck without an adequate factual basis.

### A. Length of Delay

The trial court concluded that the delay between Beck's arrest and his speedy-trial motion, which spanned about one year and ten months, was unreasonable enough to require a complete speedy-trial analysis and weighed against the State.

21

From Beck's arrest until he filed his initial speedy-trial motion, one year and ten months elapsed. This delay exceeds the threshold that typically warrants a complete speedy-trial analysis. *See Lopez*, 631 S.W.3d at 114 (stating delay of eight months to a year or more generally crosses threshold requiring complete analysis). The record indicates this is an ordinary DWI prosecution that remains subject to the customary threshold. *See Zamorano*, 84 S.W.3d at 649–50 (indicating that "simple DWI" prosecution was not "complex case" and remained subject to usual threshold).

In addition, the delay in question exceeds the threshold by between ten to fourteen months. This is sufficiently well beyond the threshold for the length of delay, in and of itself, to weigh heavily against the State. *Cf. id.* at 649 (indicating delay of two years and ten months from arrest to speedy-trial hearing was sufficiently unreasonable in length that, standing alone, it weighed heavily against State). Accordingly, the record supports the trial court's evaluation of the first factor.

## B. Reasons for Delay

The trial court concluded that DPS, as an agent of the State, was to blame for the delay in this case and that "all delay" was therefore "attributable solely to the State's negligence or misconduct." It held the delay weighed against the State.

The State contends Beck agreed to all resets and that any delay attributable to these resets is therefore justifiable and cannot be held against the State. All the reset forms are signed by Beck or his lawyer. But the forms themselves do not state

whether the parties agreed to or opposed the resets or otherwise indicate the effect of a signature. The lone evidence in the record supporting the State's position that Beck agreed to all the resets is the affidavit made by the assistant criminal district attorney, in which he avers Beck did so. The trial court, however, did not find the resets were agreed. Instead, the trial court stated in its findings of fact and conclusions of law that its policy is to assign a reset date and have the parties sign the reset form "to acknowledge receipt of the written notice of the next setting."

The trial court implicitly rejected the State's position that Beck agreed to all the resets. We cannot say the limited evidence in the record refutes the trial court's finding of fact. For this reason, we defer to the trial court's finding that Beck did not agree to the resets. *See Gonzales*, 435 S.W.3d at 808 (instructing that appellate courts almost entirely defer to trial court's findings of fact so long as its findings are supported by the record); *Kelly*, 163 S.W.3d at 726–28 (instructing that trial court's findings are entitled to deference, in part because trial court's personal knowledge of parties and sequence of events place it in better position to draw inferences from proceedings than appellate court, and noting that trial court is entitled to disbelieve evidence so long as it possesses reasonable articulable basis for doing so); *see also Ussery*, 596 S.W.3d at 284 (noting that trial court discounted reset forms that stated they were agreed because all of its forms say so even when they are not, and holding that record did not support State's position that accused agreed to resets).

23

But two of the reset forms—signed by Beck on November 4, 2021 (resetting the case until January 6, 2022) and January 6, 2022 (resetting the case until March 17, 2022)—show the case was reset to allow Beck to hire counsel. Together, these forms indicate that just over four months of delay is justifiable because it is attributable to Beck, not the State. *See Balderas*, 517 S.W.3d at 768 (stating that delay attributable to accused or his counsel weighs against speedy-trial violation).

The record shows the remainder of the delay is attributable to the delay by the DPS in analyzing Beck's blood for intoxicants and reporting those results. Delay of this sort is considered negligence, and it counts against the State but not heavily. *See Hopper*, 520 S.W.3d at 924 (observing that neutral reasons for delay, like crowded dockets, weigh against State but do so less heavily than deliberate delay by State).

Therefore, while the trial court erred in finding that all of the delay was attributable to the State, the record shows that most of it was attributable to the State. Similarly, the trial court erred in concluding that delay resulted either from negligence or misconduct, since there is no evidence of misconduct. *See Balderas*, 517 S.W.3d at 768 (indicating court cannot simply presume misconduct). Nonetheless, the trial court's overall conclusion that this factor weighed against the State remains correct, given that one year and six months of the delay is attributable to the State's negligence in timely analyzing and reporting Beck's blood sample. *See*

*Shaw*, 117 S.W.3d at 890 (concluding that second factor weighed against State in case in which "State did not justify most of the lengthy delay" in question).

### C.    Assertion of the Right

Consistent with Beck's position, the trial court concluded that Beck was not required to assert his right to a speedy trial before he filed his motion. The trial court reasoned that because Beck did not waive his right to a speedy trial, he timely asserted the right. The trial court further reasoned that because Beck timely asserted his right to a speedy trial, Beck did not acquiesce in the delay. We cannot agree.

Contrary to the trial court's reasoning, preservation of error as to the right to a speedy trial does not necessarily render the assertion of the right timely. *See Richardson*, 631 S.W.3d at 277 (noting that tardy assertion of right to speedy trial does not waive right but does make it hard to show denial of right); *Smith*, 436 S.W.3d at 366 (agreeing that accused did not waive right to speedy trial but observing that his actions were inconsistent with demand for speedy trial). An accused must timely assert his right to a speedy trial, and it weighs against a speedy-trial challenge when the accused fails to do so. *Balderas*, 517 S.W.3d at 771.

Here, the record shows that Beck waited about one year and ten months before he asserted his right to a speedy trial. The Court of Criminal Appeals has characterized speedy-trial motions filed after comparable lengths of time as being tardy. *See Kelly*, 163 S.W.3d at 729 (describing motion to dismiss filed after more

25

than year of delay as tardy); *Zamorano*, 84 S.W.3d at 651 (agreeing that speedy-trial motion filed about two-and-a-half years after accused's arrest was tardy).

Moreover, the record shows Beck acquiesced in this delay. While the record does not show he agreed to all resets, no evidence exists that suggests he asserted his speedy-trial right at any point before he filed his initial speedy-trial motion. Because the burden to show the timely assertion of the right rests on the accused, the Court of Criminal Appeals has held that when, as here, the record indicates quiet acquiescence, this indication weighs very heavily against a finding of a speedy-trial violation. *E.g.*, *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315.

We acknowledge that Beck could not have filed a speedy-trial motion until the State formally charged him, which the State did not do until about one year and five months after his arrest. *See Cantu*, 253 S.W.3d at 283 (stating accused cannot file speedy-trial motion "until formal charges are made"). But the right to a speedy trial "can be asserted in other ways" beforehand. *Id.* And Beck did not do so.

Contrary to the trial court's conclusion that Beck did not acquiesce in the delay, its own findings of fact further demonstrate that he did so. For example, with respect to Beck's initial speedy-trial motion, the trial court found that he "did not request a hearing or trial date in the motion" or its accompanying proposed order. Likewise, with respect to Beck's second motion seeking dismissal, the trial court again found that he "did not request a hearing" on the motion. The mere filing of a

26

motion unaccompanied by a timely request for a hearing or ruling indicates acquiescence in the delay. *See Shaw*, 117 S.W.3d at 890 (faulting accused for not seeking hearing on motion to dismiss for several months after filing of motion).

In addition, the trial court found that Beck announced he was not ready for trial after filing his initial speedy-trial motion. The trial court further found that Beck announced he was not ready for trial after filing his motion to dismiss. Both announcements were based on his lawyer's scheduling conflicts. But the record lacks evidence that Beck sought to set the case for trial on the first available trial date for which his lawyer did not have a conflict. When, as here, an accused files a speedy-trial motion but agrees to or requests further delay afterward, this circumstance weighs against dismissal. *See Emery*, 881 S.W.2d at 709 (noting that accused requested multiple continuances after asserting speedy-trial right and stating that this circumstance showed accused was not persistent in demanding speedy trial); *see also Zamorano*, 84 S.W.3d at 650 (holding delay attributable to defense's announcement that it was not ready for trial rendered defense responsible for that resetting).

Hence, we reject the trial court's findings and conclusion that Beck timely asserted his right to a speedy trial and did not acquiesce in the delay. Beck's demand for a speedy trial was tardy and much of his conduct was inconsistent with someone who desired a speedy trial rather than dismissal. This is especially true here, given the length of the delay. *See Dragoo*, 96 S.W.3d at 314 (stating accused who desires

27

speedy trial is more likely to take action to obtain one when delay persists and noting lack of timely demand strongly indicates accused does not want speedy trial). The third factor weighs very heavily against Beck's request for dismissal. *See id.* at 314–15 (holding that accused's tardy assertion of right and quiet acquiescence in delay weighed very heavily against him in light of lengthy nature of delay).

### D.    Prejudice from Delay

The trial court found that "the delay caused Beck to suffer undue anxiety" and also "caused Beck to suffer memory loss of the event that would damage his ability to effectively assist his defense at trial." However, these findings are conclusory.

At the outset, we note that the trial court did not hold an evidentiary hearing on Beck's speedy-trial motions. *See Lopez*, 631 S.W.3d at 115 (noting lack of evidentiary hearing to support accused's factual claims). This is especially significant with respect to the issue of prejudice because prejudice is fact-intensive. *See Henson*, 407 S.W.3d at 769 (characterizing prejudice as fact-intensive and stating it may not be readily apparent without factual development in trial court).

The lone evidence Beck submitted in support of prejudice consists of his trial lawyer's verifications accompanying the two speedy-trial motions, in which his lawyer averred that the facts stated in the motions were true and correct. In the motions, Beck's lawyer recited that the delay caused Beck "great anxiety and concern," but he did not provide any underlying factual details about this anxiety or

28

concern. Similarly, Beck's lawyer recited that due to the delay Beck no longer has an accurate, "independent memory of the facts leading up to his arrest" without specifying what Beck had forgotten or explaining why these lapses are material. Conclusory assertions of this sort do not demonstrate prejudice. *State v. Moreno*, 651 S.W.3d 399, 415 (Tex. App.—Houston [1st Dist.] 2022, no pet.). The bare assertion of lapsed memory is not evidence of an impaired defense. *Munoz*, 991 S.W.2d at 829. An accused must show a material impairment of memory. *Id.*

In addition, trial counsel's representations on these subjects would not be competent evidence even if they were not conclusory in nature. A lawyer cannot testify in lieu of his client about the client's memory and state of mind to establish prejudice for purposes of a speedy-trial challenge. *See Lopez*, 631 S.W.3d at 115 (disagreeing with conclusion that trial court could have made finding based on unsworn statements of defense counsel because these statements are not competent evidence unless counsel has personal knowledge on subject); *Gonzales*, 435 S.W.3d at 811 (reiterating that statements of counsel on record may be considered as evidence only when he is speaking based on first-hand knowledge). These facts can only be established by the client himself. *See, e.g.*, *Gonzales*, 435 S.W.3d at 805–07 (discussing speedy-trial hearing testimony of accused and his mother regarding their own lack of memory about underlying events that transpired six years before).

29

The trial court sidestepped these evidentiary defects by concluding that the length of delay was so excessive that prejudice was presumptive, and the State thus bore the burden of showing that Beck's ability to defend himself was unimpaired. *See id.* at 812–15 (advising that sometimes "the length of delay may be so excessive" that it presumptively compromises reliability of trial in ways not susceptible to proof, and indicating State must rebut presumption of prejudice in these instances unless record otherwise shows accused acquiesced in excessive delay).

On this record, we do not agree that the length of delay was so excessive as to excuse Beck from making a particularized showing of prejudice. Here, the length of delay was one year and ten months from the time of Beck's arrest until he moved for a speedy trial. We are unaware of any decision by the Court of Criminal Appeals in which it has held there was presumptive prejudice due to a delay of this length. *See id.* (holding delay was so excessive as to be presumptively prejudicial in case in which underlying events occurred six years beforehand and relying on federal decisions with similarly excessive periods of delay, including more than five years, eight-and-a-half years, and almost ten years); *Shaw*, 117 S.W.3d at 889–90 (presuming delay of three years and two months prejudiced defense); *Dragoo*, 96 S.W.3d at 315 (agreeing three-and-a-half-year delay between arrest and trial of accused was so excessive as to be presumptively prejudicial). Furthermore, this one-year-and-ten-months delay occurred in a simple DWI prosecution, in which Beck is

30

accused of operating a motor vehicle under the influence in a public place. Notwithstanding that this much delay is generally unreasonable in a mundane case like this one, this is not the kind of complex prosecution in which material evidence is likely to have become lost or unavailable over the course of just one year and ten months. *Cf. Shaw*, 117 S.W.3d at 886 (aggravated sexual assault of a child).

In any event, when, as here, an accused acquiesces in the delay, his acquiescence extenuates any presumptive prejudice. *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 314–15. When this is the case, the accused must show some prejudice for this factor to favor dismissal. *See Shaw*, 117 S.W.3d at 890–91 (discounting presumptive prejudice because accused acquiesced in delay and holding fourth factor weighed against finding of speedy-trial violation, given that accused failed to show any prejudice); *Dragoo*, 96 S.W.3d at 315–16 (same). As we have noted, apart from Beck's trial lawyer's conclusory assertion that Beck's memory has faded in some unspecified manner, Beck has not identified evidence that has become lost or unavailable or any other way in which he was prejudiced.

Beck also relies on his "great anxiety and concern" as prejudicial. But as with his claimed lapse of memory, his evidence of anxiety and concern is conclusory. Additionally, to support dismissal, anxiety and concern usually must consist of more than the ordinary anxiety and concern associated with being criminally charged. *See Cantu*, 253 S.W.3d at 285–86 (stating general anxiety is relevant but insufficient to

31

show prejudice if it is no more than is usually associated with criminal charge); *Shaw*, 117 S.W.3d at 890 (noting accused did not offer evidence of "unusual anxiety or concern" exceeding that "normally associated with being charged" for offense).

It is undisputed that Beck made bond after his arrest and remained free for the duration of the proceedings. Therefore, he suffered no prejudice from incarceration. *See Shaw*, 117 S.W.3d at 890 (holding pretrial incarceration was immaterial to prejudice from delay given that accused "was out on bond at all relevant times").

In conclusion, the trial court erred in its findings and conclusion as to prejudice. As a matter of law, the record does not establish presumptive prejudice. As a matter of fact, the record contains no evidence of any prejudice. For these reasons, the fourth factor—prejudice—does not support a speedy-trial violation.

## F. Balancing the Four Factors

The trial court concluded all four factors weighed in favor of finding that the State violated Beck's right to a speedy trial. Having concluded on review that two of these factors—specifically, assertion of the right and prejudice from delay—do not support finding a speedy-trial violation, we necessarily disagree. Here, the trial court correctly found the length of delay to be unreasonable, and this would otherwise weigh heavily against the State. Moreover, the record shows that most of this delay—all but four months attributable to Beck's effort to hire a lawyer—resulted from the State's negligence, specifically, the undue delay by the DPS

32

laboratory in testing Beck's blood and in failing to timely report the results of the test afterward. This too weighs in favor of finding a speedy-trial violation, albeit not heavily so. But the evidence shows as a matter of law that Beck was tardy in asserting his right to a speedy trial, doing so only a year and ten months after he was charged with DWI. It also shows he quietly acquiesced in the delay caused by the State. Together, these circumstances strongly suggest that Beck did not desire a speedy trial, especially given the prolonged nature of the delay as to the testing and repeated case resets. Beck's conduct after moving for a speedy trial corroborates a lack of earnestness. In particular, he did not set his speedy-trial motions for hearing, did not put on evidence in support of dismissal when a hearing occurred, and announced he was not ready for trial more than once. Finally, the delay was not so excessive that prejudice is presumptive, and Beck did not introduce any competent evidence of prejudice. Balancing these four factors, we hold they do not weigh in favor of finding a violation of Beck's right to a speedy trial. *See Dragoo*, 96 S.W.3d at 316 (holding on net that accused's quiet acquiescence in delay and lack of prejudice outweighed three-and-a-half-year delay and State's failure to explain or justify this delay).

We sustain the State's second issue.

## CONCLUSION

We reverse the trial court's order dismissing this cause, and we remand the cause for further proceedings consistent with our opinion and judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Publish. TEX. R. APP. P. 47.2(b).